**In the Interest of T.B.**

**Appeal of T.B., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 25, 2010.

Filed Oct. 26, 2010.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, participating party.

BEFORE: BOWES, OLSON, and FREEDBERG,* JJ.

OPINION BY BOWES, J.:

This is an appeal from the dispositional order of the Court of Common Pleas of Philadelphia County entered following Appellant's adjudication of delinquency based on his commission of acts constituting four incidents each of burglary, conspiracy, possession of an instrument of crime ("PIC"), and one instance of receiving stolen property ("RSP"). We reverse and remand.

The relevant facts of this case are as follows. On February 21, 2008, Philadelphia Police Officer Scott Gill and his partner were notified that a 2003 white Lincoln Town Car, which had been reported stolen, was being operated in the area of the 1100 block of Alcott Street. The officers responded to the area and observed Appellant driving the Lincoln. The officers followed Appellant until he entered a gas station and they placed him under arrest. Appellant, who was fifteen years old, was held in a juvenile holding facility.

At that time, Detective Joseph Baird was investigating Appellant's possible involvement in numerous burglaries in the area. Three days prior to Appellant's arrest, a different detective spoke with Appellant's mother and requested permission to speak with Appellant about the burglaries. Appellant's mother indicated that she would attempt to arrange for Appellant to speak with the police. Upon learning of Appellant's arrest, Detective Baird contacted Appellant's mother and obtained permission to speak with Appellant about the burglaries and the stolen Lincoln. The record does not indicate that Detective Baird discussed Appellant's *Miranda* rights with Appellant's mother at any time.

Approximately two hours after the police placed Appellant in the holding cell, Detective Baird interviewed Appellant. Prior to beginning the interview, Detective Baird verbally provided Appellant with his *Miranda* warnings. The officer also supplied Appellant with a printed copy of the *Miranda* warnings, which Appellant initialed, signed, and dated. After the police provided Appellant with his *Miranda* warnings, Appellant indicated that he understood his rights and waived his right to

* Retired Senior Judge assigned to the Superior Court.

counsel. Thereafter, Appellant admitted that he and another individual named Steven Hayes committed burglaries at four separate residences. Appellant identified a photograph of Mr. Hayes and named a location where Mr. Hayes could be located. However, Appellant denied stealing the Lincoln and claimed that he bought the vehicle for $500.

According to Appellant, he knocked on the doors of the houses and/or rang the doorbell to determine whether anyone was at home. He then acted as a lookout while Mr. Hayes forcibly entered the residences utilizing a crowbar. Appellant acknowledged that the burglaries occurred between 11:00 a.m. and 3:00 p.m. and that Mr. Hayes paid him after taking the stolen items to a pawnshop or selling the items on the street. Appellant also indicated a third person was involved, but he refused to identify that individual. Subsequently, Appellant filed a motion to suppress his inculpatory statements.

At the suppression hearing the parties stipulated that Appellant's I.Q. was sixty-seven, he read at a third grade level, and that this arrest was his first. Following the hearing, the suppression court denied Appellant's motion to suppress and immediately held an adjudicatory hearing. At the conclusion of that hearing, the court adjudicated Appellant delinquent. Thereafter, on June 12, 2008, the court committed Appellant to St. Gabriel's Hall. This appeal followed, wherein Appellant raises four questions for our review.

1. Was not the evidence insufficient to sustain the verdicts of guilt [1] on the charges of burglary an[d] related offenses at 1105 Alcott Street (complainant Marie Carmelle) and 1036 Van Kirk [S]treet (complainant Louise Bleil) in that there was no testimony regarding ownership and non-permission to enter?

2. Did not the Commonwealth fail to established [sic] a *corpus delicti* for the burglaries at 1105 Alcott Street and 1036 Van Kirk [S]treet, prior to utilizing [Appellant's] statement to establish guilt?

3. Did not the lower court err in denying [Appellant's] motion to suppress his statement, where the Commonwealth failed to meet its burden of proof that [Appellant's] *Miranda* waiver and subsequent statement was knowing, intelligent and voluntary under both the Pennsylvania and federal constitutions, where: defendant was only fifteen years of age, reading at a third grade level with an IQ of sixty-seven, was inexperienced with the criminal justice system, and was not given the opportunity to consult with or have an informed[,] interested adult present?

4. Did not the [Appellant] receive ineffective assistance of counsel when counsel (after investigation and consultation with a witness) failed to call the witness who was willing and able to testify that she is [Appellant's] mother and was never asked for permission to speak to her son by the police while he was in custody, nor did she give the police permission to do so?

Appellant's brief at 4 (footnote added).

Appellant's first contention is that the evidence was insufficient to sustain his adjudication of delinquency on two of the four counts of burglary. According to Appellant, since the Commonwealth failed to present testimony regarding ownership and non-permission to enter the premises regarding the burglaries at 1105 Alcott Street and 1036 Van Kirk Street, it did not establish the elements of burglary.

---

1. We note that juveniles are not found guilty of crimes; rather, they are adjudicated delinquent. *In re A.B.*, 987 A.2d 769 (Pa.Super.2009) (*en banc*).

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The factfinder is free to believe all, part or none of the evidence. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. A.W.C.,* 951 A.2d 1174, 1177 (Pa.Super.2008).

■■ 18 Pa.C.S. § 3502, burglary, provides:

(a) **Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(a). The Commonwealth may prove ownership and non-permission to enter circumstantially. Instantly, Detective Lauder testified that each of the burglaries was committed by forcible entry through the back door of the houses between 11:00 a.m. and 3:00 p.m. Additionally, the Commonwealth introduced evidence that Appellant resided at 1131 Alcott Street, within close proximity to the residences which were burglarized. Since Appellant was fifteen at the time and resided at 1131 Alcott Street, it can be logically inferred that he did not own the burglarized houses. Further, because the homes were entered forcibly, it is evident that the owners had not granted permission to enter. Moreover, Appellant admitted that he acted as a lookout while another individual forced open the doors with a crowbar, entered the home, and stole electronic items. *See Commonwealth v. Sanford,* 580 Pa. 604, 863 A.2d 428 (2004) (concluding that in addressing a sufficiency claim we consider all testimony without regards to its admissibility); *Commonwealth v. Reed,* 990 A.2d 1158, 1161 (Pa. 2010) (same). Accordingly, the Commonwealth introduced sufficient evidence for the court to adjudicate Appellant delinquent on the charge of burglary.

■ The second issue raised by Appellant on appeal is that the Commonwealth failed to establish a *corpus delicti* for the two burglaries discussed *supra;* therefore, the court should not have considered his confession as evidence of Appellant having committed those crimes.

The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion.

The *corpus delecti* [sic] rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delecti* [sic] is

literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. The historical purpose of the rule is to prevent a conviction based solely upon a confession or admission, where in fact no crime has been committed.

*Commonwealth v. Dupre,* 866 A.2d 1089, 1097 (Pa.Super.2005) (citations and footnotes omitted). Hence, the Commonwealth is required to corroborate a confession with independent evidence that the circumstances are more consistent with the commission of a crime than an accident. *Commonwealth v. Taylor,* 574 Pa. 390, 831 A.2d 587, 590 (2003). Simply put, the Commonwealth cannot convict a person solely based upon a defendant's confession.

In the present case, the Commonwealth presented evidence that the homes were forcibly entered through rear doors between the hours of 11:00 a.m. and 3:00 p.m. Appellant did not reside at these locations and did not have permission to enter as demonstrated by the forced entry. Since evidence was introduced that the locations were entered forcibly and items were taken from those residences, sufficient independent evidence was introduced that a crime occurred. Thus, Appellant's second issue does not warrant relief.

 Appellant's third claim is that the suppression court erred in denying his suppression motion.

> When we review an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses

for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*In Interest of N.L.,* 711 A.2d 518, 522 (Pa.Super.1998) (citations omitted). However, "[w]hether a confession is constitutionally admissible is a question of law and subject to plenary review." *Commonwealth v. Carter,* 855 A.2d 885, 890 (Pa.Super.2004); *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879 (1998). Thus, this Court does not, nor is it required to, defer to the suppression court's legal conclusions that a confession or *Miranda* waiver was knowing or voluntary. Instead, we examine the record to determine if it supports the suppression court's findings of fact and if those facts support the conclusion that, as a matter of law, Appellant knowingly and intelligently waived his *Miranda* rights. Preliminarily, we note:

> Regardless of whether a waiver of *Miranda* is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also *knowing and intelligent.*
>
> *Miranda* holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interro-

gation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived.

*Commonwealth v. Cephas,* 361 Pa.Super. 160, 522 A.2d 63, 65 (1987) (emphasis in original).

A determination of whether a juvenile knowingly waived his *Miranda* rights and made a voluntary confession is to be based on a consideration of the totality of the circumstances, including a consideration of the juvenile's age, experience, comprehension and the presence or absence of an interested adult.

*In Interest of N.L., supra* at 520. In examining the totality of circumstances, we also consider: (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) "any and all other factors that could drain a person's ability to withstand suggestion and coercion." *Nester, supra* at 882.

Appellant maintains that based on the totality of the circumstances, his *Miranda* waiver was not knowingly and intelligently made. Specifically, Appellant argues that his age, I.Q., inexperience with the criminal justice system, and the deprival of the opportunity to consult with an interested adult prior to his interview, rendered his *Miranda* waiver unintelligent and unknowing. In leveling his argument, Appellant avers that his lack of contact with the criminal system affected his ability to "think clearly and knowledgeably in the inherently coercive atmosphere of police interrogation." Appellant's brief at 26. He further opines that because the police did not afford him an opportunity to receive informed parental advice, he did not

have an adequate understanding of his rights. Lastly, he reasons that the above referenced factors when combined with his mild mental retardation resulted in an invalid waiver of his rights.

The Commonwealth contends that Appellant's claim lacks merit. In support of that contention, the Commonwealth argues that Appellant gave "a sophisticated statement in which he admitted responsibility for some crimes, denied responsibility for others and refused to identify a conspirator." Commonwealth's brief at 12. Moreover, the Commonwealth reasons that Appellant was not denied an opportunity to consult with an interested adult because his mother knew prior to Appellant's arrest that the police were interested in speaking with him. In addition, according to the Commonwealth, the police interrogation of Appellant was not manipulative or coercive.[2] The Commonwealth argues that the duration and means of the interrogation were relatively short, with the interrogation lasting less than one hour.

After careful review of the record, we agree with Appellant and find that the suppression court committed an error of law in determining that, based on the totality of circumstances, Appellant intelligently and knowingly waived his *Miranda* rights. The record establishes the following facts. Police arrested Appellant and placed him in a juvenile holding cell for two hours. Prior to speaking with Appellant, police contacted Appellant's mother and inquired with her if they could speak with Appellant regarding a stolen car and several burglaries. According to the police, Appellant's mother indicated that the police could discuss the matters with her son. Police did not inform Appellant's

---

**2.** We note that the Commonwealth makes no distinction between Appellant's waiver of his *Miranda* rights and arguing that Appellant's confession was voluntary. Instead, the Commonwealth's position focuses exclusively on the voluntariness of Appellant's confession.

mother of Appellant's *Miranda* rights, nor did they ask if she would like to be present for his interview. Further, the police did not offer Appellant an opportunity to discuss anything with his mother or any other interested adult. At no time after Appellant's arrest and prior to his confession did he consult with an interested adult. Appellant was fifteen years old and had no prior experience with police. Additionally, Appellant's IQ was 67 and he read at only a third grade level.[3]

However, three days before Appellant's arrest, police contacted Appellant's mother to ask her if they could discuss with Appellant the burglaries discussed *supra.* At that time, Appellant was not under arrest and not entitled to *Miranda* warnings; accordingly, the police were under no obligation to inform Appellant or his mother about his legal rights. We also note that nothing in the record establishes that Appellant ever spoke to his mother about this request. Nevertheless, the suppression court inferred, without any evidence of record, that Appellant consulted with his mother about talking with police about his possible involvement in the aforementioned burglaries. *See* N.T., 4/2/08, 49–54, 62. Subsequent to asking Appellant's mother for permission to speak with her son, but without affording her an opportunity to talk with him, police issued Appellant his *Miranda* warnings. Appellant signed a *Miranda* waiver indicating that the police advised him of his rights and subsequently confessed to taking part in several burglaries.

 Initially, we acknowledge that the *per se* requirement of the presence of an interested adult during a police interview of a juvenile is no longer required. Nevertheless, it remains one factor in determining the voluntariness of a juvenile's waiver

of his *Miranda* rights. *See Commonwealth v. Williams,* 504 Pa. 511, 475 A.2d 1283 (1984). Both the suppression court and Commonwealth have made much of Appellant's mother having previously informed the police that she would arrange for Appellant to speak to the police about the burglaries. However, at that time, Appellant was not under arrest and therefore he was not entitled to *Miranda* warnings, nor does the record substantiate that Appellant's mother actually discussed the matter with Appellant. Accordingly, Appellant's mother was not informed of Appellant's right to remain silent or right to an attorney. Nor did the police inform Appellant's mother of Appellant's rights when she authorized the police to speak to him after his arrest. This is in stark contrast to cases which have allowed the police to question a juvenile after providing an opportunity to consult with an interested adult or having an interested adult present. *Commonwealth v. Williams, supra; Commonwealth v. Waters,* 334 Pa.Super. 513, 483 A.2d 855 (1984); *Commonwealth v. Morningwake,* 407 Pa.Super. 129, 595 A.2d 158 (1991); *In Interest of N.L., supra; Commonwealth v. Carter, supra.*

In *Williams, supra,* our Supreme Court, after examining the totality of circumstances, held that a seventeen-year-old juvenile's confession was valid where: (1) the juvenile had considerable experience with the legal system; (2) the juvenile was not subjected to physical or psychological abuse; (3) was of normal intelligence; (4) had the opportunity to speak with his father prior to his confession and; (5) his father was present during the interview. *Id.* at 1288.

---

**3.** An IQ below seventy is considered mentally challenged. *See Atkins v. Virginia,* 536 U.S. 304, 309 n. 3, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). ·

Similarly, in *Waters, supra*, this Court determined that a confession made by a sixteen-year-old was constitutionally sound. We found that since the juvenile was not subjected to physical or psychological abuse, he and his father were informed of his *Miranda* rights on two separate occasions, and the juvenile consulted privately with his father, the confession was knowingly, voluntarily, and intelligently made. *Waters, supra* at 859.

Further, in *Morningwake, supra*, we concluded that a fifteen-year-and-eleven-month-old juvenile's confession was properly elicited. We reasoned that, despite the juvenile's youth, his confession was lawfully obtained because he had previous encounters with police, was given the opportunity to consult with an interested adult who was informed of the defendant's *Miranda* rights, was himself given *Miranda* warnings three separate times, spoke with an interested adult, and his mother also was made aware of his rights. *Id.* at 161.

In *In the Interest of N.L., supra*, a fourteen-year-old juvenile was charged with sexually assaulting his two-and-one-half-year-old stepbrother after the father of both boys found the juvenile assaulting the younger boy. The juvenile's father called the police and reported the incident at which time the juvenile was arrested. The police brought the juvenile to the Sex Crimes Unit, placed a telephone call to his parents at the local children's hospital, and requested to speak with his mother. The juvenile's stepmother, the mother of the victim, responded to the call, consented to allow the police to interview the juvenile, and indicated that the parents did not wish to be present for the interview. The stepmother, however, was specifically informed that her stepson had the right to an attorney and the right to remain silent.

Lastly, in *Carter, supra*, we held that the appellant's confession was voluntary where: (1) the police contacted the appellant's mother; (2) informed her of his *Miranda* rights; (3) offered to provide her a ride to the police station so she could be present, which she refused; (4) the appellant was arrested several times before; (5) was familiar with the juvenile system; and (6) the interview of approximately two hours was not unreasonably long.

The present case, however, does not involve a juvenile who was familiar with the legal system, nor was his mother or any other interested adult informed of Appellant's legal rights, and police did not offer Appellant an opportunity to speak with his mother or an interested adult. Moreover, the court's conclusion that Appellant was of average intelligence is unsupported by the evidence of record. The Commonwealth and Appellant stipulated that Appellant's I.Q. was sixty-seven and he could read only at a third grade level despite being of high school age. Although I.Q. and intelligence level alone do not warrant a finding that a *Miranda* waiver was unintelligent, and unknowing,[4] when combined with the additional factors present in the case herein, it is evident that, based on the totality of circumstances, Appellant lacked the requisite level of comprehension of the consequences of waiving his *Miranda* rights. *See Cephas, supra.*

Although some factors present in the instant case indicate that Appellant's confession may not have been coerced, the voluntariness of a confession is only one part of the equation. This Court must also evaluate whether the *Miranda* waiver,

4. This Court remains cognizant of case law holding that the fact that a defendant possesses a low I.Q. does not automatically render a confession involuntary. *See Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311, 317 (1983) (collecting cases).

separate and apart from the confession, was made with a full awareness of both the "nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 65.

In examining the totality of circumstances to determine the legal question of whether Appellant's *Miranda* waiver was knowing and voluntary, we conclude that Appellant's age, fifteen, combined with his intelligence level, his lack of consultation with an interested adult immediately prior to the interrogation, and the fact that no adult was present or informed of Appellant's rights before the police interviewed him all support the finding that his waiver was unintelligently and unknowingly entered. Hence, we hold that the suppression court committed an error of law in concluding that Appellant knowingly and intelligently waived his *Miranda* rights before confessing. Accordingly, we reverse the trial court's denial of Appellant's suppression motion.[5]

Dispositional order reversed. Case remanded. Jurisdiction relinquished.

**5.** Since we have reversed the suppression court's ruling regarding Appellant's confession, we do not address Appellant's final claim.