J-A26032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ABRAHAM JOHN KLINE | |
| Appellant | No. 166 MDA 2014 |

Appeal from the Judgment of Sentence December 5, 2013
In the Court of Common Pleas of Columbia County
Criminal Division at No(s): CP-19-CR-0000592-2012

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 03, 2014**

Appellant Abraham Kline ("Appellant") appeals from the judgment of sentence entered in the Columbia County Court of Common Pleas following his jury trial conviction for third degree murder[1] and aggravated assault.[2] After careful review, we affirm.

We summarize the relevant trial evidence and procedural posture as follows.  Appellant and his paramour, Jocelyn Romano, resided together in an RV on property owned by Catherine Kline, Appellant's mother.  On the morning of May 15, 2012, Appellant shot Ms. Romano in the back with a rifle that he then used to shoot himself in the chest.  First responders took the

_____

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 2702(a)(4).

pair to the hospital, where Ms. Romano was pronounced dead later that morning.

Also on May 15, 2012, at 12:10 p.m., Catherine Kline executed a written consent allowing the Pennsylvania State Police to search the "outside areas" of the property. A trooper searched and photographed the outside of the premises, giving special attention to evidence subject to degradation from the elements such as bloodstains. While the trooper conducted this exterior search/photography, other off-scene troopers had begun the process of obtaining a search warrant for the entire Kline property. The trooper conducting the exterior search knew that other troopers were seeking a warrant to search the entire property.

After surveying and photographing the exterior of the property, the trooper entered the RV and took photographs intended to document the interior of the vehicle in the event that evidence therein might also be subject to degradation. During this entry, the trooper did not touch, seize, or remove anything, but instead simply took photographs to document the condition of the RV.

Later, after learning the court had issued a search warrant for the entire Kline property, the state police returned to the RV and conducted a full search and seizure of evidence.

Three days later, on May 18, 2012, hospital personnel removed Appellant's breathing tube and pronounced him fit to communicate with police. Unarmed, plain-clothes state troopers interviewed Appellant after

administering **Miranda**[3] rights and explaining the state police's standard Rights and Waivers Form, which Appellant signed. Three days later, on May 21, 2012, the state police served a search warrant authorizing the collection of Appellant's DNA, and again interviewed Appellant in his hospital bed after once more administering **Miranda** rights and after Appellant signed another waiver.

Appellant later sought the suppression of the evidence from the RV and the statements he made to the state police while in the hospital. The trial court denied the requested suppression.

A jury convicted Appellant of third degree murder and aggravated assault.[4] The trial court then sentenced Appellant to 20 to 40 years of incarceration on the third-degree murder conviction.[5] Appellant filed a post-sentence Motion to Modify and Reduce Sentence, which the trial court denied. Appellant then timely appealed.

Appellant presents the following issues for our review:

A. WHETHER THE TRIAL COURT ERRED IN ITS SENTENCE BY FAILING TO CONSIDER MITIGATING FACTORS AND SENTENCING KLINE TO THE MAXIMUM STATUTORY LIMIT.

---

[3] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602 (1966).

[4] The jury acquitted Appellant of first-degree murder.

[5] The aggravated assault conviction merged for sentencing purposes.

B. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS ITEMS SEIZED FROM HIS HOME AS THE SEARCH WAS ILLEGAL AND UNCONSTITUTIONAL.

C. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS APPELLANT'S STATEMENTS AS THE STATEMENTS WERE NOT MADE KNOWINGLY AND VOLUNTARILY AS THE DEFENDANT WAS HOSPITALIZED AND HIGHLY MEDICATED.

Appellant's Brief, p. 6.

## A. *The Sentencing Claim*

Appellant first claims that the trial court abused its discretion in imposing a statutory maximum sentence of 20 to 40 years of incarceration for his third degree murder conviction because the trial court failed to take into account certain mitigating factors during sentencing. **See** Appellant's Brief, pp. 19-21. This claim fails to raise a substantial question for review.

Appellant's claim raises a challenge to the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

- 4 -

*Allen*, 24 A.3d at 1064.

Appellant in the present case filed a timely notice of appeal and preserved his issues in a Motion to Modify and Reduce Sentence. Further, Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief, pp. 17-18. Accordingly, we now determine whether Appellant has raised a substantial question for review and, if so, proceed to a discussion of the merits of the claim. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa.1987).

"A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the [sentencing] code or is contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa.Super.2013) *(internal citations omitted)*; *see also* 42 Pa.C.S. § 9781(b). "We determine whether a particular case raises a substantial question on a case-by-case basis." *Christine*, 78 A.3d at 10. A bald or generic assertion that a sentence is excessive does not, by itself, raise a substantial question justifying this Court's review of the merits of the underlying claim. *Id.*; *see also Commonwealth v. Harvard*, 64 A.3d 690, 701 (Pa.Super.2013). Further, a claim that the court failed to consider certain mitigating factors does not present a substantial question. *See Commonwealth v. Johnson*, 961 A.2d 877 (Pa.Super.2008), *appeal denied*, 968 A.2d 1280 (Pa.2009); *see also Commonwealth v.*

*Coolbaugh*, 770 A.2d 788, 793 (Pa.Super.2001) ("Appellant's claim that the court did not consider his personal life situation of having a drug problem does not raise a substantial question"); *Commonwealth v. Rhoades*, 8 A.3d 912 (Pa.Super.2010) (a claim that the trial court ignored the evidence of an appellant's alleged brain damage, limited mental capacity, and good behavior in prison is essentially a claim that the trial court inappropriately applied the mitigating information when imposing sentence, which does not present a substantial question for appellate review); *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super.1995) ("an allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate"); *Commonwealth v. Lawson*, 650 A.2d 876, 881 (Pa.Super.1995) (claim that trial court ignored rehabilitative needs in imposing sentence does not constitute a substantial question for review); *Commonwealth v. Bershad*, 693 A.2d 1303, 1309 (Pa.Super.1997) (claim that trial court did not give adequate consideration to rehabilitative needs does not present a substantial question); *Commonwealth v. Williams*, 562 A.2d 1385, 1387-88 (Pa.Super.1989) (claim that trial court should have imposed a lesser, more appropriate sentence in light of the defendant's poor health and family situation constituted a request that this Court substitute its judgment regarding an appropriate sentence, which does not raise a substantial question).

Here, Appellant's 2119(f) statement does not identify a violation of a specific provision of the Sentencing Code or a fundamental norm of the sentencing process that the trial court contravened. Instead, in his Pa.R.A.P. 2119(f) statement, Appellant alleges that the trial court imposed an unreasonable sentence for third degree murder because it failed to properly consider certain alleged mitigating factors. *See* Appellant's Brief, pp. 17-18. Importantly, Appellant does not argue that the sentencing court relied upon any impermissible factors in sentencing, relied solely on the severity of the crime committed, or sentenced beyond statutory limits. Instead, he alleges that the sentencing court failed to consider what he felt were mitigating factors[6] in imposing its sentence. Accordingly, Appellant's Rule 2119(f) statement does not raise a substantial question for our review.[7]

Even had the Appellant stated a substantial question for review, the claim fails on the merits. In imposing sentence, the trial court considered

---

[6] Appellant's 2119(f) statement discusses the alleged mitigating factors that Appellant would have liked the sentencing court to consider. *See* Appellant's Brief, p. 17. These factors included: "(1) Kline's sincere and genuine remorse; (2) Kline's ability to appreciate [the] wrongfulness of [his] conduct; (3) Kline's low likelihood of re-offending; and (4) Kline's lack of a prior criminal history." *Id.*

[7] We acknowledge that "a substantial question exists when a sentencing court imposed a sentence *in the aggravated range* without considering mitigating factors." *Rhoades*, 8 A.3d at 919 n.12 (*citing Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa.Super.2003) (emphasis in original). However, in this case, the trial court sentenced Appellant within the standard range of the sentencing guidelines, as discussed *infra*.

the circumstances of the crime, sentencing guidelines, and the mitigating factors Appellant alleged it ignored. *See* 1925(a) Opinion, pp. 1-3. The court sentenced Appellant to a standard range sentence within the statutory maximum.[8] *See id.* at 1-2. The trial court explained the sentence in relation to the guidelines as follows:

> The Sentencing Guidelines indicate that [Appellant's] Prior Record Score was "0," and a[] third degree murder carries an Offense Gravity Score of 14. Applying the "Deadly Weapon Used" matrix ([Appellant] shot the Victim with a rifle), the standard range was "90-SL," or 7 years, 6 month[s], to the statutory limit. Since the statutory maximum was 40 years, and since the minimum sentence must be at least half of the maximum sentence, the upper end of the standard range would dictate a sentence of 20-40 years. This is the exact sentence which was imposed.

1925(a) Opinion, pp. 1-2. "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.2010). Accordingly, in addition to failing to raise a substantial question for review, this excessiveness claim fails on the merits as well.

_____

[8] The upper level of the sentencing guidelines' standard range for third degree murder is the statutory limit regardless of prior record score. *See* 204 Pa.Code § 303.16. The OGS for third degree murder is 14. Appellant had a PRS of zero (0). These facts combined with the "Deadly Weapon Used" guideline matrix enhancement yielded a standard range sentence of 90-SL. *See* 204 Pa.Code § 303.16. The statutory maximum for third degree murder is 40 years. *See* 18 Pa.C.S. § 1102(d).

## B. *The Suppression Claims*

In his next two issues, Appellant claims the trial court erred in denying suppression of evidence. He is incorrect.

### 1. *Evidence from the RV*

Appellant first argues that the trial court erred in denying suppression of the evidence recovered from his RV because the state police had originally entered and photographed the RV without first securing a search warrant. *See* Appellant's Brief, pp. 22-25. This claim lacks merit.

Initially, the Commonwealth argued that the pre-warrant entry into the RV was intended solely to photograph the interior to identify and document any evidence that may have degraded over time. *See* Commonwealth Brief, p. 10. This possibility of evidence degradation, the Commonwealth claimed, constituted exigent circumstances to permit a warrantless entry. *Id.* The trial court did not agree and determined that the initial entry into the RV was illegal because there were no exigent circumstances for the entry into the home. *See* June 12, 2013 Suppression Memorandum Opinion and Order ("Suppression Order"), pp. 1-2.

Nonetheless, based on the "independent source" doctrine, the trial court refused to suppress the evidence obtained from the RV. *See* Suppression Order, pp. 2-3. The independent source doctrine provides that the prosecution may introduce evidence seized improperly where the prosecution establishes that the evidence would have been discovered inevitably through an independent source. *See Commonwealth v.*

*Brundidge*, 620 A.2d 1115, 1119 (Pa.1993). A properly-secured search warrant can constitute an independent source where (1) the decision to seek the warrant was not prompted by what police saw during the initial entry, and/or (2) information gained in the first entry does not affect the decision of the warrant-issuing magistrate. *Id.* (*citing Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529 (1988)).

The trial court properly applied the independent source doctrine to the facts of this case. Here, the police's decision to seek a warrant was not prompted by what the trooper saw during the initial entry; other troopers were already in the process of seeking a search warrant for the property when the initial entry occurred. *See* Suppression Order, p. 2. Additionally, the affidavit used to seek the warrant did not include any information from the trooper who conducted the initial entry, nor did that trooper communicate any of his observations to the issuing Magisterial District Justice. *Id.* Further, the state police did not seize any items from the RV until after the issuance of the warrant.[9] *Id.* Because the initial illegal entry into the RV did not affect or influence the issuance of the legal search

_____

[9] While the trial court criticized the State Police's "standard procedure" of conducting warrantless searches of homes without adequate exigent circumstances, noting that such similar searches could be viewed as "contrived and in bad faith" in the future, and observing that "[i]t would have been better to wait 49 minutes for the [s]earch [w]arrant[,]" the court ultimately found that under these circumstances, the application of the independent source doctrine was appropriate. Suppression Order, pp. 2-3.

warrant for the RV, the trial court properly applied the independent source doctrine in this matter.[10]

2. ***Appellant's Statements from his hospital bed***

Appellant next argues that the trial court erred in failing to suppress the statements he made to the police from his hospital bed because he was "highly medicated". **See** Appellant's Brief, pp. 26-29. This claim also fails.

"The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." ***Commonwealth v. Harrell***, 65 A.3d 420, 434 (Pa.Super.2013).

> ***Miranda*** holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of

---

[10] To the extent that the Commonwealth argues the inevitable discovery doctrine allows for the admission of the evidence, it is mistaken. The inevitable discovery doctrine provides that, "[i]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, then the evidence is admissible." ***Commonwealth v. McLaurin***, 45 A.3d 1131, 1136 (Pa.Super.2012). This doctrine deals with scenarios where someone would have somehow discovered evidence legally in any event – like a volunteer search party spread out across a field and finding a weapon or a body as a result of a systematic search. Here, the evidence was inside Appellant's RV. Only the investigating police on scene were going to encounter the evidence inside the RV.

comprehension may a court properly conclude that *Miranda* rights have been waived.

*In re T.B.*, 11 A.3d 500, 505-06 (Pa.Super.2010). "In examining the totality of circumstances, we also consider: (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion." *Id.* at 506 (internal quotations omitted). A defendant's statement to police while medicated and in the hospital is subject to this totality of the circumstances examination. *See Commonwealth v. Harm*, 416 A.2d 533, 535 (Pa.Super.1979). Where an alert, responsive, and cooperative defendant in no acute physical distress is in a hospital bed but appears to understand his *Miranda* rights before voluntarily waiving them and giving a statement, a trial court may deny suppression of such statements. *Id.* This Court defers to the trial court's findings in such situations. *Id.*

Here, the trial court found credible the evidence proffered at the suppression hearing that Appellant was clearly responsive and able to answer questions posed to him during the interrogations. Suppression Order, p. 3. The trial court applied the above-referenced factors and determined as follows:

> [T]he duration [of the interviews] (2 hours on May 18[th]; 1 hour on May 21[st]) was not inordinate; the [Appellant's] physical and psychological states were stable (he did not laugh or cry; he coughed up dried bloody phlegm from time to time, but seemed

comfortable); the conditions of his detention were benign, in that he was comfortable and cared for in his hospital room and was not in shackles; the attitude of the interrogators was professional and courteous; and no other factors are of record to indicate that [Appellant's] ability to withstand coercion and suggestion was compromised.

Suppression Order, pp. 3-4. Further, the trial court credited the testimony of multiple nurses who testified that they had no concerns that Appellant could not or did not understand the police questioning. *Id.* The police read Appellant his rights before each interview and he agreed to proceed and signed waivers. *Id.* The trial court did not abuse its discretion in refusing to suppress Appellant's statements from his hospital bed.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/3/2014