J-A22006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RAHIEM CARDEL FANT, | |
| Appellee | No. 1793 MDA 2014 |

Appeal from the Order Entered October 14, 2014
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000273-2014

BEFORE:  BOWES, JENKINS, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 09, 2015**

The Commonwealth appeals from the order entered October 14, 2014, granting Rahiem Cardel Fant's motion to suppress.[1]  After careful review, we reverse.

Appellee was a rear passenger in an automobile stopped by Pennsylvania State Troopers Kenneth Riggle and his partner Trooper Andrew Mincer.  The officers observed the vehicle, a green Mitsubishi, at approximately 11:40 p.m. on May 4, 2014, traveling without operating tail lights.  After pulling over the vehicle, Trooper Mincer exited and approached

_____

[1]  We have jurisdiction to consider this appeal pursuant to ***Commonwealth v. Dugger***, 486 A.2d 382, 386 (Pa. 1985), and Pa.R.A.P. 311(d).

* Retired Senior Judge assigned to the Superior Court.

the passenger side of the Mitsubishi. As he walked toward the car, Trooper Mincer saw Appellee make movements that looked like he placed several items into his pockets and hid items in between the rear seats.

After Appellee failed to heed his commands to keep his hands out of his pockets, Trooper Mincer directed the three occupants of the car to exit. Trooper Mincer knew the front seat passenger, who had threatened to shoot state police in one prior encounter. He conducted a frisk of the front seat passenger and driver before turning his attention to Appellee. Trooper Mincer also knew Appellee from prior contacts and was aware that Appellee had carried a four-inch pocketknife on at least two other occasions.

Appellee was breathing heavily, sweating, and appeared nervous even before Trooper Mincer asked him to exit the car. When Trooper Mincer attempted to pat down Appellee, Appellee turned away and put his body against the car to prevent the trooper from searching him. Trooper Mincer, along with another officer, Brian Burger of the Lock Haven Police, restrained Appellee and the trooper searched him. Trooper Mincer felt a bulge in Appellee's left front pocket and located $816 in cash. In addition, Trooper Mincer felt a cylinder-like object in Appellee's groin region and found a clear bottle of PCP.

The Commonwealth charged Appellee with possession with intent to deliver ("PWID") and possession of a controlled substance. Appellee filed a bill of particulars and, on August 25, 2014, a suppression motion. Appellee

contended that the search violated his Fourth Amendment and Article I, § 8 rights against unreasonable searches.  The suppression court conducted a suppression hearing and took the matter under advisement.  Thereafter, it granted Appellee's motion to suppress, finding that Trooper Mincer did not have reasonable suspicion to conduct the **Terry**[2] frisk.  The Commonwealth timely appealed and the suppression court directed it to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The Commonwealth complied, and the suppression court indicated that the reasons for its decision could be found in its earlier opinion in support of its suppression order.  The matter is now ready for our review.  The Commonwealth presents two questions for this Court's consideration.

> I.    Did the court err in finding that the trooper did not have the authority to order the defendant to exit the vehicle?
>
> II.   Did the court err in finding that the trooper did not have requisite cause necessary to conduct a "**Terry**" frisk of the defendant?

Commonwealth's brief at 4.

This Court evaluates the grant of a suppression motion under well-established principles. We consider the evidence of the defendant, as the prevailing party below, and any evidence of the prosecution that is uncontradicted when examined in the context of the suppression record.

---

[2] **Terry v. Ohio**, 392 U.S. 1 (1968).

*Commonwealth v. Peterson*, 17 A.3d 935, 937 (Pa.Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*. Importantly, we are not bound by the legal conclusions of the suppression court. *In re T.B.*, 11 A.3d 500, 505 (Pa.Super. 2010).

We begin by noting that to conduct a *Terry* frisk, police must have reasonable suspicion that the individual is armed and dangerous. *Commonwealth v. Pakacki*, 901 A.2d 983 (Pa. 2006). "[A] police officer may frisk the individual to search for weapons if 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Commonwealth v. Espada*, 528 A.2d 968, 969 (Pa.Super. 1987) (quoting *Terry*, *supra*).

It is well-settled that "even a combination of innocent facts, when taken together, may warrant further investigation[.]" *Commonwealth v. Kemp*, 961 A.2d 1247, 1255 (Pa.Super. 2008) (*en banc*); *see also Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999). As this Court cogently stated in *Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa.Super. 1998), "Merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal. . . . Rather, we view the circumstances through the eyes of a trained officer, not an ordinary citizen."

The Commonwealth contends that the suppression court erred in ruling that "Trooper Mincer conducted an unreasonable search and seizure of defendant when Trooper Mincer ordered defendant out of the vehicle and conducted a frisk of defendant's person under the justification of defendant's furtive movements, nervousness and previous possession of a pocketknife." Commonwealth's brief at 12 (quoting Suppression Court Opinion, 10/14/14, at 12). It highlights that police are permitted to remove occupants of an automobile without any suspicion that criminal activity is occurring. *See Commonwealth v. Brown*, 654 A.2d 1096, 1102 (Pa.Super. 1995). Thus, it maintains that the suppression court incorrectly ruled that Trooper Mincer did not have reasonable suspicion to ask Appellee to step out of the vehicle.

Appellee does not defend the suppression court's reasoning in this regard. Instead, he argues that the suppression court's reliance on *Commonwealth v. Reppert*, 814 A.2d 1196 (Pa.Super. 2002) (*en banc*), supports its conclusion that the *Terry* frisk was unlawful. We disagree. Reppert was a back seat passenger in a vehicle stopped for a registration sticker violation. While pursuing the vehicle, police saw Reppert engage in movements that indicated that he was stuffing items into his pockets or between the seat. The officer, however, did not remove Reppert from the car or frisk him after stopping the car. Instead, he accepted the driver's explanation for the expired registration sticker and elected not to issue a citation. However, after the conclusion of that portion of the stop, he asked

Reppert to exit the car. He then saw bulges in Reppert's pockets and directed Reppert to empty his pockets. When Reppert did so, the officer uncovered drugs, a small scale, and cash. We held that the original lawful traffic stop had concluded and that Reppert's furtive movements, without more, did not justify the additional detention and search.

The Commonwealth contends that, under the totality of circumstances presented herein, Trooper Mincer had reasonable suspicion to perform the pat down search. We agree. Instantly, Trooper Mincer had prior interactions with Appellee. Trooper Mincer knew Appellee carried a four-inch folding knife on previous occasions. Appellee was nervous, sweating, breathing heavily, and would not refrain from moving his hands before Trooper Mincer asked him to alight from the vehicle. Additionally, Trooper Mincer saw Appellee make movements that indicated that he was attempting to hide objects in the rear seat. Thus, Trooper Mincer did point to specific and articulable facts that Appellee was engaged in criminal activity.

To the extent the suppression court concluded that Trooper Mincer could not reasonably believe Appellee was armed since he frisked the front seat passenger and driver first, it ignored the fact that Trooper Mincer knew that the front seat passenger had threatened to shoot police. Simply choosing to frisk that individual and the driver before Appellee does not *ipso facto* mean that he could not articulate specific facts indicating a reasonable fear that Appellee was also armed.

- 6 -

Moreover, the suppression court plainly erred in determining Trooper Mincer's removal of Appellee from the car to be a significant factor in conducting its legal analysis. ***See Brown***, ***supra***. An officer may ask a person to exit his car without suspicion of criminal wrongdoing without running afoul of the Fourth Amendment or Article I, § 8. Further, while the ***Reppert*** Court held that furtive movements did not provide sufficient grounds for the second interaction with the defendant therein, this case is distinguishable and presents additional factors not at issue in ***Reppert***. Specifically, Trooper Mincer knew Appellee carried a weapon in previous interactions. The contention by Appellee and the suppression court that the carrying of a knife is not illegal absent testimony that Appellee used the knife illegally, ***see*** Suppression Court Opinion, ***supra*** at 11, ignores the long settled law that a combination of innocent behaviors may justify an investigative search.

This case is more akin to ***Commonwealth v. Buchert***, 68 A.3d 911 (Pa.Super. 2013), than ***Reppert***. In ***Buchert***, police also pulled over a vehicle for a broken taillight. The stop occurred at night, as here. The defendant made furtive movements inside the car by bending forward and appearing to reach under his front passenger seat. The police directed the occupants of the car to remain still and keep their hands visible. Unlike the present case, where Appellee continued to move his hands, Buchert and his companion complied. Buchert appeared nervous and was breathing heavily.

After Buchert and the driver were removed from the car and searched, police searched the immediate vicinity of where Buchert had been sitting. Police recovered a gun. The court therein suppressed the evidence. We reversed, distinguishing **Reppert**. Quoting **Commonwealth v. Simmons**, 17 A.3d 399, 405 (Pa.Super. 2011), we set forth:

> When properly understood, **Reppert** stands for the proposition that pre-stop furtive movements, by themselves, may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of circumstances has established that the furtive movements did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention.

**Buchert**, **supra** at 914-915. Continuing, the **Buchert** Court held,

> [t]he combination of Appellee's furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that Appellee might gain immediate control of a weapon.

**Buchert**, **supra** at 916-917; **see also Simmons**, **supra**.

**Buchert** compels the same result in this case. The combination of Trooper Mincer's previous interactions with Appellee where Appellee carried a weapon, Appellee's furtive movements, and extreme nervousness during a night-time stop rendered the **Terry** frisk lawful.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/9/2015