J-A31030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KALI A. SMITH | |
| Appellant | No. 1645 MDA 2014 |

Appeal from the Judgment of Sentence September 2, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001740-2013

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 05, 2016**

Kali A. Smith appeals from the judgment of sentence imposed by the Court of Common Pleas of Berks County following his convictions for two counts of robbery,[1] two counts of conspiracy to commit robbery,[2] one count of burglary,[3] and one count of conspiracy to commit burglary.[4]  After careful review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii), (iv).

[2] 18 Pa.C.S § 903(a)(1).

[3] 18 Pa.C.S. § 3502(a).

[4] 18 Pa.C.S. § 903(a)(1).

The underlying facts are as follows. On March 30, 2012, at approximately 1:20 p.m., a robbery occurred at an off-campus apartment near Kutztown University. Borough of Kutztown police officers arrested Christopher Biney, Anthony Battle and Jesse Thomas, all of whom identified Smith as a participant in the robbery. Todd Dawson was subsequently arrested as well.

Almost a year later, on March 28, 2013, Corporal P. Michael Clery, Jr. arrested Smith, who at the time was a nineteen-year-old football player at Kutztown University. The arrest occurred at approximately 7:00 a.m. in the office of the football coach. Pennsylvania State Trooper Alyssa Becker and Corporal Justin Soumas of the Kutztown University Police were also present at the arrest.

Smith asked police to retrieve items from his unsecured locker. Corporal Soumas directed the coach to bring him the items, which included Smith's set of keys, a student identification card and a cell phone. Corporal Soumas gave the cell phone to Corporal Clery, who retained it as evidence.

Corporal Clery and Trooper Becker then transported Smith to the Kutztown Police Department.

At approximately 7:15 a.m., Corporal Clery removed his firearm, put it in a safe, brought Smith into the cell block area and removed his handcuffs. Smith was alone in the cell block for approximately fifteen minutes while Corporal Clery went to get some paperwork. When Corporal Clery returned, he shackled Smith's feet and brought him to an interview room down the

hall where Trooper Becker and Corporal Soumas were also present. Although Trooper Becker and Corporal Soumas were armed they did not display their weapons to Smith.

Corporal Clery read the Kutztown Borough Police Department *Miranda*[5] rights form to Smith, and then handed it to him to review. Corporal Clery asked Smith if he understood his rights, and Smith nodded his head up and down. Corporal Clery asked Smith to sign the *Miranda* rights form and Smith indicated that he did not want to sign it.

Corporal Clery began questioning Smith about the March 30, 2012 robbery. Smith stated that he was unaware of the incident and that he did not know Biney, Thomas, Battle or Dawson. The interview concluded when Smith indicated that he did not want to speak anymore.

Based on Smith's statement during the interview that he did not know Biney, Corporal Cleary obtained a warrant for Smith's cellular phone records. In the affidavit of probable cause, Corporal Clery averred that a previous search of Biney's cellphone had yielded "Smith, Kali" as a contact.

Smith filed an omnibus pretrial motion seeking to suppress Smith's statements and the evidence seized. The trial court held a hearing on August 9, 2013, and denied the motion by order dated August 27, 2013. The court concluded that police properly obtained and searched his cell

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (166).

phone, Smith understood his **Miranda** rights and that "the answers he gave to the questions posed by police were knowingly, intelligently, and voluntarily given and, therefore admissible." Findings of Fact and Conclusions of Law, 8/27/13, at 4.

The matter proceeded to trial on August 6, 2014, and on August 8, 2014, a jury convicted Smith of the above-referenced offenses. At a hearing on September 2, 2014, the court imposed an aggregate sentence of six to twelve years' incarceration.

This timely appeal followed in which Smith raises the following issues for our review:

1. Should the lower court have suppressed [Smith's] statements and all evidence derived therefrom where the investigating officer did not secure a knowing, voluntary, and intelligent waiver of [Smith's] **Miranda** rights before continuing to pepper him with interrogative questions?

2. Should this Court remand this matter to the trial court for a hearing on after discovered evidence in the form of a [signed statement] implicating alleged co-conspirator's recantation of his trial testimony?

Appellant's Brief, at 4.

With respect to Smith's first issue, our Supreme Court has stated:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and

may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations and quotations omitted).

Regardless of whether a waiver of *Miranda* is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also knowing and intelligent.

*Miranda* holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived.

*In the Interest of T.B.*, 11 A.3d 500, 505 (Pa. Super. 2010) (citations omitted).

In *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003), our Supreme Court noted:

[A]n explicit waiver . . . after being advised of [one's] *Miranda* rights . . . is not necessary to a finding of waiver under the Fifth Amendment. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The pertinent question is "whether the defendant in fact knowingly and voluntarily waived the rights delineated in the

> *Miranda* case." ***Id.*** "Waiver can be clearly inferred from the actions and words of the person interrogated." ***Id.***

***Bomar***, 826 A.2d. at 843.

> The test for determining . . . the validity of a waiver looks to the totality of the circumstances. Some of the factors to be considered include: the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other factors which may serve to drain one's powers of resistance to suggestion and coercion.

***Commonwealth v. DeJesus***, 787 A.2d 394, 403 (Pa. 2001) (citations omitted).

With respect to the totality of the circumstances in the instant matter, it is clear that Smith was in custody. However, there is nothing in the record indicating that the police acted in a suggestive or coercive matter. No threats or promises were made and no intimidation occurred. N.T. Pretrial Hearing, 8/9/13, at 19. Although two out of three officers present were armed, neither of them displayed their weapon. ***Id.*** at 19, 43, 54. All of the officers were seated at the table with Smith, not standing over him. ***Id.*** at 13. Smith's legs were shackled, but his arms were not. ***Id.*** The entire interview lasted approximately thirty minutes. ***Id.*** at 37. Smith did not appear to be under the influence of drugs or alcohol. ***Id.*** at 20, 45, 55.

Before questioning Smith about the charges, Corporal Clery read the *Miranda* rights to him from a preprinted form. ***Id.*** at 16. Corporal Clery then asked Smith if he understood his rights, to which Smith responded by nodding his head up and down. ***Id.*** Corporal Cleary then read to Smith the

waiver portion of the *Miranda* rights form. When Smith said, "I don't want to sign anything," Smith replied, "You don't need to sign it. That's okay." *Id.* at 17. Corporal Clery testified, "I proceeded with questioning him at that point." *Id.*

Significantly, this Court has held that "after a defendant is given his or her *Miranda* rights, a statement by the defendant that he understands those rights followed by the answering of questions posed by the interrogating officer constitutes a sufficient manifestation of a defendant's intent to waive those rights so as to satisfy state constitutional protections." *Commonwealth v. Baez*, 21 A.3d 1280, 1286 (Pa. Super. 2011).

In light of the fact that Smith acknowledged that he understood his *Miranda* rights by nodding his head up and down (the non-verbal equivalent of expressing assent), and the interview ended when Smith stated that he did not want to talk anymore, we conclude that the trial court did not err as a matter of law when it determined that Smith's statements were admissible.

Smith filed a timely appeal of his judgment of sentence on September 30, 2014. "In late October 2014," Appellant's Brief, at 15, Smith obtained a signed statement by Battle dated October 21, 2014, in which Battle states that he planned and committed the robbery with Biney and Thomas. He further avers that they falsely implicated Smith and Dawson in the crime even though "they really didn[']t have anything to do with the whole thing." Statement of Anthony Battle, 10/21/14, at 1.

- 7 -

On February 6, 2015, Smith filed a motion for a new trial based on after-discovered evidence, which the trial court properly deemed it had no jurisdiction to consider in light of the September 30, 2014 notice of appeal from Smith's judgment of sentence.

On February 18, 2015, Smith filed in this Court a request for remand to the trial court to consider his application for a new trial based on after-discovered evidence.

Pa.R.CrimP. 702(C) provides that "[a] post sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." The comment to Rule 720 provides, in relevant part:

> Paragraph (C) requires that any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, . . . after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge.

Pa.R.Crim.P. 720(C), comment.

The Commonwealth argues that Smith is not entitled to relief because he failed to raise his after-discovered evidence claim promptly. We agree. As noted, Smith became aware of Battle's statement in late October 2014. Even if we assume this occurred on October 31, 2014, Smith did not file his petition in this Court until February 18, 2015, which is 110 days after he became aware of the evidence. Although the Rules of Criminal Procedure do not define the term "promptly," Rule 101(C) provides that "to the extent

practicable these rules shall be construed in consonance with the rules of statutory construction." Pa.R.Crim.P. 101(C). Section 1903(a) of the Statutory Construction Act of 1972, provides in relevant part, "words and phrases shall be construed according to their common and approved usage." 1 Pa.C.S. § 1903(a). "Promptly" is defined as "with little or no delay." The Free Dictionary, http://www.thefreedictionary.com/promptly (last visited Dec. 10, 2015). We have no difficulty concluding that a period of 110 days does not constitute little or no delay.

Furthermore, we note that in the context of the Post Conviction Relief Act,[6] a petition seeking an after-discovered evidence exception to the timeliness requirement of the Act must be "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Because we conclude Smith did not file his petition for remand promptly, we are precluded from granting relief.

Judgment of sentence affirmed. Request for remand denied.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016

---

[6] 42 Pa.C.S. §§ 9541-9546.