J-S43029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA JUSTIN LOOKINGBILL | |
| Appellant | No. 1718 MDA 2015 |

Appeal from the Judgment of Sentence February 25, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001489-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 02, 2016**

Appellant, Joshua Justin Lookingbill, appeals from the judgment of sentence entered February 25, 2014, in the Court of Common Pleas of York County, following his conviction of second-degree murder, third-degree murder, and burglary[1] for the stabbing death of Nakia Williams. We affirm.

The victim was the new paramour of Olga Cuadra, the mother of Appellant's three children. Cuadra and the victim lived with the children in a second floor apartment located at 412 South Pershing Avenue in York, Pennsylvania. **See** N.T., Trial, 1/13-15/14 at 129. On the evening of January 30, 2013, Appellant arrived at the victim's home to drop off money and cigarettes, but Cuadra did not let him in. **See id**. at 149-150. At approximately 4:15 a.m. the following morning, Cuadra and the victim were

---

[1] 18 Pa.C.S.A. §§ 2502(b), 2502(c) and 3502(a)(1), respectively.

sleeping in their bed when the victim suddenly sat up and told Cuadra to call the police and an ambulance. *See id*. at 131-132. The victim then fell back on the bed bleeding. *See id*. at 132. Cuadra's seven-year-old son, who was asleep in the next room, awoke to see his stepfather, the Appellant, running down the stairs. *See id*. at 134. Cuadra relayed this information to the 911 operator. *See id*.

When police arrived at the residence, they observed that the door to the second floor entrance off the rear balcony was ajar and a rear window was pushed in to make entry. *See id*. at 105-106. The victim, who was lying on the bed in a large pool of blood, was deceased. *See id*. at 106-107. The following day, a high school student discovered a bloody steak knife in an alleyway off Pershing Avenue and informed police. *See id*. at 158-160. A DNA analysis of the blood on the knife blade matched that of the victim. *See id*. at 218-219.

Based upon Detective Anthony Fetrow's interviews with Cuadra and her son on the morning of the murder, Appellant was taken into custody at his place of work and read his *Miranda*[2] rights. *See id*. at 234-237. During a subsequent custodial interview, before which Detective Fetrow again apprised Appellant of his *Miranda* warnings, Appellant admitted that he broke into Cuadra's home and murdered the victim in a "blind rage." Transcript of Recorded Interview, 1/31/13 at 4-5, 40.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Appellant was subsequently charged with one count each of first-degree murder, second-degree murder, third-degree murder, and Burglary. Prior to trial, Appellant filed a motion to suppress his statements to police, which the trial court denied following an evidentiary hearing. Appellant filed a motion to proceed *pro se*. At a hearing on the matter, the trial court granted Appellant's motion and appointed Bruce Blocher, Esquire, as standby counsel. At a later hearing, the court denied Appellant's *pro se* oral motion to suppress evidence based on an unlawful warrantless arrest and a motion seeking the trial court's recusal.

At the start of trial, Appellant sought to admit into evidence the entirety of his videotaped statement to police, including discussions regarding possible sentencing options and alleged offers of leniency in exchange for Appellant's cooperation, which had been previously redacted by agreement of the parties. The trial court denied Appellant's *pro se* request and ordered that those portions of the statement remain excluded from evidence. Following jury selection, Appellant requested the assistance of counsel and the court ordered Attorney Blocher to resume representation of Appellant. The jury convicted Appellant of second-degree murder, third-degree murder, and burglary. The trial court sentenced Appellant to an aggregate term of life imprisonment.

Following Appellant's conviction, the trial court permitted Attorney Blocher to withdraw as counsel, and appointed William Graff, Jr., Esquire, as new counsel. On October 7, 2014, Attorney Graff filed a petition for leave to

file a *nunc pro tunc* appeal, which the trial court granted. This *nunc pro tunc* appeal followed.

Appellant first challenges the sufficiency of the evidence of convictions of second-degree murder and burglary.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mauz*, 122 A.3d 1039, 1040-41 (Pa. Super. 2015) (citation omitted). The factfinder, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *See Commonwealth v. Valentine*, 101 A.3d 801, 805 (Pa. Super. 2014), *appeal denied*, 124 A.3d 309 (Pa. 2015). Furthermore, the Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008).

Murder of the second degree is a criminal homicide "committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). The perpetration of a felony is defined as

"[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S.A. § 2502(d).

In this case, the underlying felony was burglary. "Under Pennsylvania law the crime of burglary is defined as an unauthorized entry with the intent to commit a crime after entry." *Commonwealth v. Alston*, 651 A.2d 1092, 1094 (Pa. 1994) (citing 18 Pa.C.S.A. § 3502). The Commonwealth need not allege or prove what particular crime the defendant intended to commit after his forcible entry into a private residence, but rather, the intent to commit a crime may be inferred from the totality of the circumstances. *See id*. at 1094-1095.

Appellant argues that there is no evidence to support a finding that he intended to commit a crime when he entered the victim's home. Appellant concedes that he entered the victim's home with the intent to see his children, but maintains it was not his intent to kill the victim when he arrived at the residence. *See* Appellant's Brief at 14. Appellant instead claims that when he saw the victim sleeping in the next room, he "lost it" and stabbed the victim in a "blind rage." *Id*.

The evidence presented at trial revealed that, on the evening prior to the murder, Appellant was angry that Cuadra did not permit him to enter the apartment. Early the following morning, Appellant stealthily entered the victim's home through a rear window—without the permission of Cuadra or

the victim. Although Appellant now contends that he killed the victim in a blind rage, he does not deny that he entered the residence with a knife in his possession. Based on the attendant circumstances, the jury could have reasonably inferred that Appellant entered the residence with the intent to harm the victim or someone else therein. Although Appellant contends he merely entered the residence to see his children, the jury was free to disbelieve his statements.

Accordingly, because we conclude the evidence was sufficient to support his conviction of burglary, we further find Appellant's burglary conviction was a sufficient predicate felony to support his conviction of second-degree murder. Therefore, his challenge to the sufficiency of the evidence fails.

Appellant next claims that the trial court should have suppressed his statement to police as it was obtained after he asserted his constitutional right to counsel. *See* Appellant's Brief at 15.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

> Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

**Commonwealth v. Houck**, 102 A.3d 443, 455 (Pa. Super. 2014) (internal citations and quotations omitted).

"To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney." **In re R.H.**, 791 A.2d 331, 333 (Pa. 2002) (plurality); **see also Miranda**, 384 U.S. at 444-445. With regard to the waiver of **Miranda** rights, this Court has explained that

> **Miranda** holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that **Miranda** rights have been waived.

**In the Interest of T.B.**, 11 A.3d 500, 505 (Pa. Super. 2010) (citation omitted).

Our Supreme Court has provided that

> an explicit statement of waiver ... after being advised of [one's] **Miranda** rights ... is not necessary to a finding of waiver under the Fifth Amendment. The pertinent question is whether the defendant in fact knowingly and voluntarily waived the rights

delineated in the *Miranda* case. Waiver can be clearly inferred from the actions and words of the person interrogated.

*Commonwealth v. Bomar*, 826 A.2d 831, 843 (Pa. 2003) (internal citations and quotes omitted).

> The test for determining ... the validity of a waiver looks to the totality of the circumstances. Some of the factors to be considered include: the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other factors which may serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. DeJesus*, 787 A.2d 394, 403 (Pa. 2001) (citations omitted) (abrogated on other grounds).

With respect to the totality of the circumstances of the instant matter, it is clear that Appellant was in custody. Detective Fetrow issued *Miranda* warnings when the Appellant was taken into custody at his place of work the morning of the murder. *See* N.T., Suppression Hearing, 9/10/13 at 19-20. Detective Fetrow then asked Appellant if he understood his rights, and Appellant responded that he did. *See id*. at 20. After Appellant was transported to the station for questioning, he was permitted to speak with his father, Roger Lookingbill, for approximately 20 minutes. *See id*. at 22. Detective Fetrow testified that after their meeting, Appellant's father asked him whether Appellant should retain an attorney. *See id*. at 22. Detective Fetrow responded that it was Appellant's decision whether to retain an attorney. *See id*. at 25. When Detective Fetrow then asked Appellant whether he wished to continue to cooperate with the investigation, Appellant responded in the affirmative. *See id*. at 25.

The transcript of the interview indicates that Detective Fetrow again issued *Miranda* warnings to the Appellant prior to questioning and asked whether Appellant understood his rights. *See* Transcript of Recorded Interview, 1/31/13 at 4-5. Appellant responded, "Yes," and did not request an attorney. *See id*. at 5. The interview then commenced for approximately 90 minutes, during which Appellant confessed to murdering the victim.

Appellant does not assert on appeal that he was coerced into waiving his *Miranda* rights, but instead argues that he in fact did invoke his right to have an attorney present. Appellant's father testified at the suppression hearing that after meeting with the Appellant at the police station, he informed Detective Fetrow that his "son wants a lawyer." N.T. Suppression Hearing, 9/10/13 at 47. Roger Lookingbill further stated that he then asked his son, "[r]ight, Josh[,]" and Appellant answered, "yes." *Id*. at 48. However, in denying Appellant's suppression motion, the trial court clearly did not find Roger Lookingbill's testimony to be credible.

Appellant's argument essentially asks that we override the suppression court's credibility determination. This we cannot do. *See Houck*, 102 A.3d at 455 ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.").

Significantly, this Court has held that "after a defendant is given his or her *Miranda* rights, a statement by the defendant that he understands those rights followed by the answering of questions posed by the

- 9 -

interrogating officer constitutes a sufficient manifestation of a defendant's intent to waive those rights so as to satisfy state constitutional protections." ***Commonwealth v. Baez***, 21 A.3d 1280, 1286 (Pa. Super. 2011) (footnote omitted). In light of the fact that Appellant verbally acknowledged that he understood his ***Miranda*** rights on two occasions and did not request an attorney during the entirety of the interview, we conclude that the trial court did not err as a matter of law when it determined that Appellant's custodial statements were admissible.

Appellant next asserts that the Commonwealth failed to prove by a preponderance of the evidence that his confession was made voluntarily. ***See*** Appellant's Brief at 26. Following the denial of his pre-trial suppression motion, Appellant again contested the voluntariness of his confession at trial. "Despite a pretrial ruling that a confession is voluntary, … a criminal defendant nonetheless is entitled to a second opportunity to test the voluntariness of his statement by introducing evidence at trial relating to voluntariness and have the jury consider the question." ***Commonwealth v. Cameron***, 780 A.2d 688, 693 (Pa. Super. 2001) (citations omitted); ***see also*** Pa.R.Crim.P. 581(J) and Comment. When a defendant alleges that his confession was involuntary, the question "is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." ***Commonwealth v.***

***Templin***, 795 A.2d 959, 966 (Pa. 2002) (citation omitted). When assessing the voluntariness pursuant to the totality of the circumstances, we examine

> the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.

***Commonwealth v. Nester***, 709 A.2d 879, 882 (Pa. 1998) (citation omitted). The Commonwealth must prove by a preponderance of the evidence that the defendant confessed voluntarily. ***See id***.

In support of his claim, Appellant reiterates the argument that he invoked his ***Miranda*** rights when he acknowledged his father's alleged statement to police that his son wanted an attorney. ***See*** Appellant's Brief at 29-30. We have already addressed this argument. The Commonwealth presented evidence that Appellant was twice issued ***Miranda*** warnings, acknowledged his understanding of those rights both times, and did not request an attorney prior to or during the interview.

When weighing conflicting testimony, the jury is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. ***See Commonwealth v. Orie***, 88 A.3d 983, 1017 (Pa. Super. 2014). The jury clearly disregarded Roger Lookingbill's testimony. As previously noted, we are satisfied that Appellant's acknowledged understanding of his ***Miranda*** rights and his willingness to thereafter answer Detective Fetrow's questions constituted sufficient manifestation of Appellant's intent to waive those rights. ***See Baez***. Accordingly, we find the

Commonwealth sufficiently established the voluntariness of Appellant's confession by a preponderance of the evidence.

In his fourth issue on appeal, Appellant argues that the trial court erred when it refused to admit into evidence the unredacted video of the police interrogation. "[T]he admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa. Super. 2012) (internal citations omitted).

Immediately prior to trial, Appellant requested that the court permit the jury to view the interrogation video in its entirety, including parts in which Detective Fetrow allegedly discussed his close friendship with the District Attorney's office and the possible offenses and sentencing terms Appellant might face. *See* N.T., Trial, 1/13/14 at 6-14. Upon consideration of Appellant's motion, the trial court ultimately ruled that Appellant could question Detective Fetrow regarding his expression of friendship with the district attorney's office prior to the second reading of Appellant's *Miranda* rights, but that Appellant could not raise the issues of possible sentences discussed during the course of the interrogation. *See id*. at 14.

Appellant claims that the admission of the redacted portions of the video would have revealed coercive police interrogation tactics relevant to the jury's determination of the voluntariness of his *Miranda* waiver and subsequent confession. *See* Appellant's Brief at 36. Even if we were to agree that the trial court's decision to preclude the admission of the unredacted

- 12 -

interrogation video into evidence was in error, we would find such error harmless. *See Commonwealth v. Marshall*, 824 A.2d 323, 328 (Pa. Super. 2003) (an error is harmless if the court determines that the error could not have contributed to the verdict). Based upon the totality of the circumstances surrounding Appellant's interrogation, we are satisfied, as noted previously, that Appellant's waiver of his *Miranda* rights and his ensuing confession were voluntary.[3] *See Nester*.

Appellant next argues that the trial court should have suppressed his confession because the police lacked probable cause to conduct a warrantless arrest. "To be constitutionally valid, a warrantless arrest must

---

[3] Although we are indeed troubled by Detective Fetrow's implication that Appellant's cooperation might result in mitigation of the charges against him, *see* Transcript of Recorded Interview, 1/31/13 at 7, we note that this comment was made *after* the detective stated that he could make no promises to induce Appellant's cooperation, *see id*. at 6. Further, we find it important that this statement was also made *after* Appellant was apprised of his *Miranda* rights, including the right to remain silent and right to counsel, and before any substantive questioning began.

> The fact that warnings were given is an important factor tending in the direction of a voluntariness finding. This fact is important in two respects. It bears on the coerciveness of the circumstances, for it reveals that the police were aware of the suspect's rights and presumably prepared to honor them. And .... it bears upon the defendant's susceptibility, for it shows that the defendant was aware that he had a right not to talk to the police.

*Templin*, 795 A.2d at 966 (citing W.R. LaFave et al., *Criminal Procedure*, § 6.2(c), at 460).

be supported by probable cause." ***Commonwealth v. Agnew***, 600 A.2d 1265, 1271 (Pa. Super. 1991) (citation omitted).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (emphasis omitted) (citation omitted). "When an officer makes an unlawful arrest, any evidence seized during a search incident to the arrest must be suppressed." ***Commonwealth v. Clark***, 735 A.2d 1248, 1251 (Pa. 1999) (citation omitted).

Here, Appellant's stepson informed police that he observed Appellant running down the steps of the family's residence immediately after the victim was stabbed. The fact that Appellant was observed fleeing directly from the scene of the murder was surely sufficient to justify a reasonable belief that he was the perpetrator of the murder. Accordingly, because there was probable cause to believe that Appellant was responsible for the victim's murder, his warrantless arrest was lawful and Appellant's argument that his confession was the result of an illegal seizure is without merit.

Lastly, Appellant contends that the trial court abused its discretion in denying his pre-sentence motion to recuse.

Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.

The party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion.

*Commonwealth v. Harris*, 979 A.2d 387, 391-92 (Pa. Super. 2009) (citations and internal quotation marks omitted).

Appellant contends that the trial court's "pattern of biased and hostile comments" during pre-trial hearings demonstrated the court's prejudice. Appellant's Brief at 44. Our review of the record reveals that Appellant requested the trial court's recusal after the court denied his oral *pro se* motion to suppress his confession as the result of an illegal arrest. *See* N.T., Pre-Trial Hearing, 1/10/14 at 34-35. During the presentation of this motion, Appellant repeatedly interrupted and challenged the trial court. *See id*. at 27-37. Although Appellant contends that the trial court grew "exasperated" with Appellant's intransigence, exasperation falls far short of proof of bias.

Not establishing bias or partiality … are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (citing *Liteky v. United States*, 51 U.S. 540) (emphasis omitted).

- 15 -

The trial court here exhibited remarkable patience in the face of Appellant's obstreperous courtroom conduct. Despite Appellant's efforts to manufacture the appearance of impropriety, we find no evidence that the trial court exhibited bias, prejudice or unfairness during the entirety of the proceedings. We therefore find the trial court did not abuse its discretion in denying Appellant's motion to recuse.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2016