J-S36043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:      PENNSYLVANIA
             Appellee  :
:
        v.  :
:
JUAN VAZQUEZ  :
:
            Appellant  :  No. 2314 EDA 2017

Appeal from the Judgment of Sentence June 12, 2017
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0000859-2015

BEFORE:  GANTMAN, P.J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.:  **FILED SEPTEMBER 27, 2018**

Appellant, Juan Vazquez, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his jury trial convictions for aggravated assault, simple assault, recklessly endangering another person, and endangering the welfare of a child.[1]  We affirm.

In its opinion filed October 26, 2017, the trial court accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises four issues for our review:

> WHETHER THE COURT'S LEGAL CONCLUSIONS WERE ERRONEOUS IN DENYING [APPELLANT'S] SUPPRESSION MOTION?
>
> WHETHER THE COURT ABUSED ITS DISCRETION IN

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1); 2701(a)(1); 2705; 4304(a)(1), respectively.

ALLOWING EXPERT TESTIMONY FROM [DETECTIVE WEBBE] WITHOUT AN EXPERT REPORT?

WHETHER THE COURT ABUSED ITS DISCRETION IN ALLOWING ADMISSION OF AN INFLAMMATORY PHOTOGRAPH OF VICTIM?

WHETHER THE COURT ABUSED ITS DISCRETION IN SENTENCING [APPELLANT]?

(Appellant's Brief at 7).[2]

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27. Regarding custodial interrogations requiring the issuance of *Miranda*[3] warnings:

> Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of [his] *Miranda* rights. Custodial interrogation is "questioning initiated by law enforcement officers after a

---

[2] For purposes of disposition, we have re-ordered Appellant's third and fourth issues.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, *supra* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Thus, [i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. [I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings.

> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [his] freedom of action is being restricted.

> \* \* \*

> Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

Thus, the ultimate inquiry for determining whether an individual is in custody for *Miranda* purposes is whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: the basis for the detention; its

length; its location; whether the suspect was transported against his…will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

**Williams, supra** at 30-31 (some internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Jonathan Mark, we conclude Appellant's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (**See** Opinion in Support of Order Denying Suppression Motion, filed October 20, 2015, at 1-2; Trial Court Opinion, filed October 26, 2017, at 14-27) (finding: **(1)** Detective Lenning credibly testified that police expressly informed Appellant he was not under arrest and was free to leave at any time; detective's testimony was supported by recording of interview; interview was voluntary, brief in duration, took place in hotel conference room, and Appellant left after interview; police did not threaten or coerce Appellant and did not arrest Appellant until seven days after interview; under these circumstances, Appellant was not subject to custodial interrogation requiring **Miranda** warnings; **(2)** detective conducted forensic analysis of Appellant's wife's[4] cell phone and information extracted from cell phone; Commonwealth provided

---

[4] The trial court refers to Victim's mother as Appellant's wife, but the record is unclear as to their marital status.

extraction report and related data to defense counsel during discovery; detective did not prepare expert report, so there was no expert report Commonwealth was obligated to provide to defense; Appellant did not file motion asking court to order expert to prepare report, per Pa.R.Crim.P. 573; given lack of defense motion and fact that Commonwealth gave defense complete cell phone extraction record, court did not abuse its discretion by allowing detective to testify as expert; **(3)** Appellant objected to admission of photograph of his son hooked up to medical apparatus based on general relevancy and undue prejudice grounds; photograph at issue is single depiction of how Appellant's son appeared in hospital; given facts and circumstances of case, Commonwealth's evidence, defense theories, and elements of crimes charged, photograph was relevant; photo demonstrated testimony and other exhibits which described Victim's medical condition, evaluation and treatment; photograph was not unduly inflammatory, and court properly overruled Appellant's objection as probative value outweighed any prejudicial effect; **(4)** Appellant's claim in concise statement stating only that court "abused its discretion at sentencing" is grossly insufficient to preserve sentencing challenge; moreover, court considered pre-sentence investigation ("PSI") report and all evidence prior to imposing sentence; court explained on record reasons for imposing aggravated range sentence; court imposed sentence consistent with protection of public, gravity of offense in relation to its impact on community, and rehabilitative needs of Appellant;

court had benefit of PSI report, so court was aware of all relevant mitigating and aggravating factors;[5] court did not abuse sentencing discretion[6]). Accordingly, we affirm on the basis of the trial court's opinions.

Judgment of sentence affirmed.

Judge Dubow joins this memorandum.

Judge Kunselman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/18

---

[5] We depart only from the trial court's statement that the failure to consider mitigating factors when imposing an aggravated sentence does not raise a substantial question. **See Commonwealth v. Felmlee**, 828 A.2d 1105 (Pa.Super. 2003) (*en banc*) (holding substantial question exists where appellant alleges sentencing court imposed sentence in aggravated range without adequately considering mitigating factors).

[6] Appellant also complains the court essentially "double counted" factors that are elements of the crimes at issue to aggravate Appellant's sentence. Nevertheless, Appellant did not preserve this claim at sentencing or in his post-sentence motion, so it is waived. **See Commonwealth v. Griffin**, 65 A.3d 932 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013) (explaining objections to discretionary aspects of sentence are waived if they are not raised at sentencing hearing or in timely filed post-sentence motion).

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :
                                       :

            v.                    :     NO.  859 CR 2015

                                         :

Juan Ramel Vazquez,              :

                                       :

    Defendant                  :

                                       :

## Order

**AND NOW**, this 20th day of October, 2015, after hearings on Defendant's omnibus pre-trial motion and upon consideration of the briefs and arguments of counsel, the record and file in this case, and the applicable law, the Court **FINDS, CONCLUDES**, and **ORDERS** as follows:

1.     Defendant's motion to suppress all statements he made to the police during his interview at a hotel is **DENIED**. Defendant contends that the circumstances of his interview with the police amounted to a custodial interrogation and that the failure of police to read him *Miranda* Warnings and obtain a written *Miranda* waiver should result in suppression of his statements. However, Detective Lenning credibly testified, and the recording of the interview submitted as Commonwealth's Exhibit 1 confirmed, that Defendant was expressly informed that he was not under arrest and that he was free to leave at any time. The interview was voluntary. It took place in a hotel conference room. Following the conclusion of the interview Defendant left the room and was not detained. Defendant was neither threatened nor coerced and the interview was not long. Defendant was not arrested until seven days after the interview. Under these circumstances, and considering the other evidence of record,

1

we find that the interview did not rise to the level of custodial interrogation and the police were not required to give Defendant *Miranda* warnings.

2.  Defendant's request for *habeas corpus* relief is **DENIED**. At the preliminary hearing the Commonwealth introduced sufficient evidence to establish a *prima facie* case against Defendant regarding the charges filed.

3.  Defendant's motion for modification and reduction of bail is **DENIED**.

4.  Defendant's motion for a budget to engage an expert witness is **GRANTED**. A budget of **ONE THOUSAND FIVE HUNDRED ($1,500) DOLLARS** for a medical or child abuse expert is **APPROVED**. A copy of bills submitted for payment by the expert in this matter shall be made available to the Court Administrator and shall be charged to the respective line item budget. In the event that any investigative task shall incur a cost or expense in excess of the initial approved fee, Defense Counsel shall file a petition and show cause why such additional investigation is warranted. Defense Counsel must confer with the Trial Judge and said conference shall be *ex parte*. Failure to confer with the Trial Judge as indicated above may cause this Court to disqualify said cost of expense for payment.

5.  The above case is placed on the December 1, 2015 Trial Term.

Defense counsel and the assistant district attorney assigned to this case shall attend an in person meeting on the 18th day of November, 2015, at 12:30 o'clock p.m. in Courtroom No. 1 for the purpose of discussing any and all outstanding issues in this matter, including, but not limited to, settlement negotiations. Defendant shall be present in the Monroe County Courthouse and available for conference with Defense counsel at the time of counsel's in person meeting.

2

The Defendant along with defense counsel and the assistant district attorney assigned to this case shall appear for a final status conference on November 25, 2015, at 12:30 p.m. in Courtroom No. 1 of the Monroe County Courthouse, Stroudsburg, Pennsylvania. This is a mandatory appearance.

A guilty plea tendered after the final status conference, must be to the Criminal Information.

**Jury selection** in the above captioned matter shall **commence on December 1, 2015, at 8:30 a.m. in Courtroom No. 3** of the Monroe County Courthouse, Stroudsburg, Pennsylvania, and counsel and Defendant are attached until the matter is concluded.

BY THE COURT:

_____
JONATHAN MARK,            J.

CC:    District Attorney
       Brian S. Gaglione, Esq.
       Court Administrator

2015 OCT 20 AM 9 32
MONROE COUNTY, PA
CLERK OF COURTS

3

## COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
            :   **NO. 859 CRIMINAL 2015**
     **v.**         :
            :   **APPEAL DOCKET NO.**
**JUAN VASQUEZ,**       :    **2314 EDA 2017**
            :
    **Defendant**      :
            :
            :

### OPINION IN SUPPORT OF ORDER PURSUANT TO Pa. R.A.P. 1925(a)

Following the denial of his post-sentence motion for reconsideration of sentence, Defendant filed an appeal from the judgment of sentence entered in this case. After the appeal was filed, we directed Defendant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Defendant complied, and we now file this opinion in accordance with Pa.R.A.P. 1925(a).[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was arrested and charged with Aggravated Assault, Simple Assault, Recklessly Endangering Another Person (REAP), and Endangering the Welfare of a Child (EWOC), stemming from an incident in which Defendant shook and seriously and permanently injured his infant son. It was the second time his son had sustained similar injuries.

---

[1] This opinion is being filed long after its due date. Frankly, the matter slipped through the cracks. I apologize for any inconvenience or delay caused by the late filing.

1

Defendant filed an Omnibus Pre-trial Motion on August 12, 2015 in which he sought, among other things, suppression of statements he made to police officers. By order dated October 20, 2015, the suppression motion was denied.

Trial commenced on March 13, 2017 and ended on March 17, 2017. The Commonwealth called eight witnesses, including the paramedic who transported the unresponsive child to the hospital and Debra Esernio-Jenssen, M.D., a board certified pediatrician and child abuse pediatrician, and submitted 49 exhibits, including substantial medical records regarding the child's injuries, treatment, and progress. Defendant called four witnesses, including two character witnesses, and took the stand himself. At the conclusion of the trial, the jury convicted Defendant of all charges.

After the verdict was accepted, we entered an order scheduling a sentencing hearing and directing our Probation Department to prepare a Pre-Sentence Investigation ("PSI") report. The report was made available to counsel for both parties prior to sentencing.

On June 12, 2017, the sentencing hearing was convened, as scheduled. At the conclusion of the hearing, Defendant was sentenced to an aggregate period of incarceration of not less than 88 months nor more than 228 months, a sentence in the aggravated range.

Defendant did not contest any of the information contained in the PSI report. Before sentence was imposed, Defendant's attorney addressed the Court. He did not request a specific length of sentence, but urged the Court to take into consideration Defendant's lack of a prior criminal record, history of gainful employment, and family

2

circumstances and support – matters which he considered to be mitigating factors. (N.T., 06/12/2017, pp. 3-4). In addition, Defendant's parents and wife, the mother of the child-victim, spoke briefly on Defendant's behalf. Defendant elected not to speak on his own behalf.

The assistant district attorney also addressed the Court. She asked that we consider sentencing Defendant to 108 to 276 months, pointing out that the victim is the Defendant's own son, the injuries the child sustained are lasting injuries, and the reason behind Defendant shaking his son was that the child would not "burp." (N.T., 06/12/2017, p. 11).

Before announcing the sentence, we explained our reasoning and informed Defendant of the facts, information, and documents on which the sentence is based. Specifically, we advised Defendant that the sentence was based on the record and file in this case, the evidence presented at trial, the comprehensive PSI report that had been prepared by our Probation Office, the statements made by Defendant's attorney, his wife and parents, his attorney, and the assistant district attorney during the sentencing hearing, and the applicable sentencing laws, rules, and guidelines. We then stated our reasons on the record. (N.T., 06/12/2017, pp. 16-21; PSI Report).

Subsequently, Defendant filed a post-sentence motion. The motion raised only sentencing issues. Specifically, Defendant challenged the discretionary aspects of sentencing, including the length of his sentence which he felt was excessive, and questioned the amount of restitution. (Defendant's Motion to Reconsider Sentence, filed June 22, 2017).

3

On June 29, 2017, we issued an order denying Defendant's motion. Defendant then filed this appeal.

## DISCUSSION

On appeal, Defendant assigns five errors, the last two of which we have renumbered to correspond to the order in which we will address them:

> a. Whether the verdict was against the weight and/or sufficiency of the evidence presented at trial.
>
> b. Whether the Court erred in denying Defendant's pre-trial Motion to Suppress his statement.
>
> c. Whether the Court erred in allowing testimony at trial of a Commonwealth's expert witness, despite the failure of the Commonwealth to provide an expert report for the witness.
>
> d. Whether the Court erred in allowing into evidence at trial an overly prejudicial and inflammatory photograph of the victim in this matter.
>
> e. Whether the Court abused its discretion at sentencing.

(Defendant's Rule 1925(b) Statement, filed August 15, 2017, ¶4 (a) – (e)).

1. <u>Defendant Waived his Weight and Sufficiency of the Evidence Claims. In the Alternative, the Claims Lack Merit</u>

In his first assignment of error, Defendant asserts boilerplate sufficiency and weight of the evidence claims. Neither claim holds water.

a. *Sufficiency of the Evidence*

It is well-settled that boilerplate assignments of error will not preserve a challenge to the sufficiency of the evidence. As our Superior Court recently stated:

> Pennsylvania Rule of Appellate Procedure 1925(b) provides, *inter alia*, "Issues not included in the Statement and/or not raised in accordance with the provisions of this

4

paragraph (b)(4) are waived." Pa.R.A.P.1925(b)(4)(vii). In *Commonwealth v. Garland*, 63 A.3d 339 (Pa. Super. 2013), this Court found the appellant had waived his sufficiency of the evidence claim where his 1925(b) statement simply averred the evidence was legally insufficient to support the convictions and in doing so reasoned:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Here, as is evident, [the a]ppellant ... failed to specify which elements he was challenging in his Rule 1925(b) statement.... Thus, we find [his] sufficiency claim waived on this basis.

*Id.* at 344 (citations omitted).

*Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (footnote omitted).

In this case, Defendant was convicted of four different crimes and sentenced on three of them. He did not specify the element or elements of the crimes he is challenging. Instead, he averred simply that "the verdict was against the weight and/or sufficiency of the evidence presented at trial." This conclusory boilerplate is grossly inadequate to preserve a challenge to the sufficiency of the evidence. Defendant waived his sufficiency claim. *Stiles, Garland.*

In the alternative, if Defendant is found to have preserved his sufficiency challenge, his claim lacks merit. The evidence amply supports the verdict.[2]

---

[2] As indicated in the text, there was ample evidence to sustain the verdict as to all charges. However, since waiver is clear, this section is being presented in the alternative. Accordingly, only a summary of the facts and law which demonstrate that the evidence was sufficient to support the verdict as to all four charges will be presented.

5

The standard of review upon a challenge to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the Trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001)(citations and quotation marks omitted).

The existence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict. *Com. v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2004). It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *In re T.B.*, 11 A.3d 500, 504 (Pa. Super 2010); *Com. v. A.W.C.*, 951 A.2d 1174 (Pa. Super. 2008). While passing upon the credibility of witnesses, the trier of fact is free to believe all, part, or none of the evidence. *Commonwealth v. Dupre*, 866 A.2d 1089 (Pa. Super. 2005).

6

In this case, Defendant was found guilty of Aggravated Assault, Simple Assault, REAP, and EWOC.

A person commits Aggravated Assault when he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702. "Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

A person commits the separate crime of Simple Assault when he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701. "Bodily injury" is "impairment of physical condition or substantial pain."

A person commits REAP when he "engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A § 2705.

"A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits [EWOC] if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304.

With respect to these crimes, the trier of fact may find the requisite criminal intent, knowledge, or recklessness from circumstantial evidence. See Comm v. Moore, 395 A.2d 1328 (Pa. Super. 1978).

Viewed in light of the applicable standards, the evidence presented at trial in this case demonstrated that Defendant shook his three-month old son so violently that

7

the child lost consciousness, became unresponsive, and sustained severe injuries, including traumatic brain injury and bleeding, that were initially life-threatening and are permanent in nature. As a result, the child is now severely and globally developmentally delayed and, while he has made some progress, will unfortunately never be normal. At the time of the incident, Defendant was alone with his son and was responsible for his care. Defendant shook his son with sufficient force to cause serious injuries because the child was crying for a long period of time because he could not burp.

In slightly more expanded terms, the child became unconscious as a result of being shaken by Defendant. When emergency responders arrived on scene, Defendant's son was non-responsive, was in cardiac and respiratory arrest, and suffered hypoxia and hypocarbia. The child had a Glasgow Coma Score of three out of a possible fifteen, the lowest score possible. (N.T., 03/13/2017, pp. 61-63 and Exhibit 1).

Dr. Esernio-Jenssen testified at length about the injuries the child sustained, his hospitalization, his medical condition from the date of injury through the present, and the effect the injuries have had and will continue to have on the child. She also reviewed and explained voluminous medical records regarding the substantial treatment the child has received since his release from the hospital, starting with his long stay in an inpatient rehabilitation facility and continuing with his extensive outpatient assessments and treatments. In broad overview, the child was hospitalized for an extended period. Examination and diagnostic testing revealed that, in the incident that gave rise to these charges, the child sustained numerous injuries,

8

including acute retinal hemorrhages and subdural hemorrhages, seizures, and loss of grey-white matter differentiation. The testing and examinations also revealed subacute, or older, hemorrhages. The acute injuries were initially life threatening; the effects are unquestionably permanent.

Dr. Esernio-Jenssen also testified extensively about acute brain injury, shaken baby syndrome, the effects of brain bleeds, and other matters relevant to the injuries that Defendant's son suffered and how he received them. The bottom line, Dr. Esernio-Jenssen testified, is that Defendant's son sustained severe traumatic brain injury that is permanent in nature and that has had and will continue to have severe adverse effects on the child. The child, Dr. Esernio-Jenssen stated, will never be normal and will always be neurologically devastated from the abusive head trauma sustained.

> From all of the review of the current records ... it supports unfortunately that [the child's] brain trauma caused significant adverse effects for him. He is not normal. He may make some small strides in his development but he will never be normal.
> A typical two-year-old can run, can jump. A typical two-year-old can feed themselves. They're speaking in two to four word phrases. They can scribble. They can pick out objects. They can put toys – a circle into a circle hole, a square into a square hole. They can do a puzzle. They comprehend. They can follow two-step commands....
> [The child] can't do – [the child] can't do any of that. And ... his deficits and his impairments are only going to become more and more evident as he ages....
> [The child] will never be normal. I'm hoping he'll continue to make some developmental improvement but he will always be neurologically devastated from his abusive head trauma.

(N.T., 3/15/2017, pp. 200-201). Dr. Esernio-Jenssen also explained that Defendant's son suffers and will continue to suffer from a "small head." Specifically, after significant

9

brain trauma, the brain doesn't develop anymore and stops growing, whereas the rest of the body continues to grow at a normal rate of speed. Finally, Dr. Esernio-Jenssen testified that the child's injuries were caused by trauma, a kind that required adult force, and noted that nether the history given by the family nor medical testing and evaluation supported any type of accidental trauma. (N.T., 03/15/2017, pp. 136).

Defendant did not contest the fact that he was alone with and the caretaker for his son when the child was injured. However, he denied any intentional or reckless conduct. Instead, Defendant claimed that the child snapped his head back while choking, causing the injuries in question. (N.T., 03/16/2017, pp. 195-200). Dr. Esernio-Jenssen discredited Defendant's contention by testifying that a three-month-old infant could not have snapped his head back-and-forth in the manner described by Defendant, and would not have the neck strength to cause the extent of injuries suffered. (N.T., 3/15/2017, pp. 199-200).

Defense counsel vigorously cross-examined the Commonwealth's witnesses, including Dr. Eseernio-Jenssen. He also called several defense witnesses, including two character witnesses, Defendant's wife, who is the Mother of the child victim, and the child's former pediatrician. A theory that prior medical conditions were responsible for the injuries and the child's condition was floated. In addition, Defendant testified on his own behalf. However, the jury obviously credited the Commonwealth's evidence and was not persuaded by Defendant's version of how his son was injured or the character witnesses.

Even the broad summary of the trial evidence recited above demonstrates that the evidence presented by the Commonwealth, when read in light of the applicable

10

standards, was sufficient to establish the elements of the crimes of which Defendant was convicted. The jury heard and observed the witnesses, saw the exhibits, and by their verdict demonstrated that they believed the Commonwealth's witnesses and evidence. There is no basis in fact or in law to disturb the jury's findings and verdict.

### b. *Weight of the Evidence*

A challenge to the weight of the evidence, like a challenge to the sufficiency of the evidence, must be properly raised and preserved. In this regard, Pa. R.Crim.P. 607, entitled "Challenges to the Weight of the Evidence," provides, in pertinent part:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing: or
>
> (3) in a post-sentence motion.

Pa. R.Crim.P. 607(A). A weight claim that is not properly raised in the trial court in accordance with Rule 607 before an appeal is filed is waived. *See Commonwealth v. Kinney,* 157 A.3d. 968 (Pa. Super. 2017); *Commonwealth v. Thompson,* 93 A.3d 478 (Pa. Super. 2014); *Commonwealth v. Holley,* 945 A.2d 241 (Pa. Super. 2008), *app. den.,* 959 A.2d 928 (Pa. 2009).

Here, Defendant did not raise his weight claim in or before his post sentence motion. He raised it, or attempted to raise it, for the first time in his Rule 1025(b) statement. In addition, the weight claim, like the sufficiency claim, is conclusory boilerplate that does not even attempt to specify how the verdict was against the weight of the evidence. For both reasons, the weight claim is waived.

11

Alternatively, the weight claim is bootless.[3] A challenge to the weight of the evidence, in contrast to a challenge to the sufficiency of the evidence,

> concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Widmer*, 744 A.2d at 751-752 (internal citations, footnote, and quotation marks omitted). Accordingly, trial courts possess only narrow authority to reverse a jury verdict on a weight of the evidence challenge.

> The general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial. There is, of course, some tension between the power of trial courts to overturn jury verdicts premised upon weight claims, and the bedrock principle that questions of credibility are exclusively for the fact-finder. Accordingly, the authority for the trial judge to upset a verdict premised upon a weight claim is narrowly circumscribed. A trial judge cannot grant a new trial because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. Instead, a new trial should be granted only in truly extraordinary circumstances, *i.e.*, when the jury's verdict is *so contrary to the evidence as to shock one's sense of justice and the award of a new trial is*

---

[3] Since waiver is clear, this section is being presented in the alternative. Accordingly, only a summary of the facts and law which demonstrate that Defendant's weight claim lacks merit will be presented.

*imperative so that right may be given another opportunity to prevail.*

*Armbruster v. Horowitz,* 813 A.2d 698, 702-703 (Pa. 2002) (internal citations and quotation marks omitted; emphasis in original).

The appellate standard of review on a claim that the verdict or adjudication was against the weight of the evidence:

> is very narrow. The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Lyons, supra at* 259 *(quoting Commonwealth v. Griffin,* 453 Pa. Super. 657, 684 A.2d 589, 596 (1996) (internal citations omitted)).

In this case, the evidence presented by the Commonwealth is summarized above. As noted, the evidence was unquestionably sufficient to support the verdict.

As to the weight of the evidence, at trial Defendant disputed the prosecution's evidence and cross-examined all of the Commonwealth's witnesses, including and especially Dr. Esernio-Jenssen. In addition, Defendant testified and provided an alternate theory as to how his son's injuries occurred. He also called character witnesses, the mother of his son, and the child's former pediatrician. The jury judged the credibility of all witnesses and weighed the evidence. By its verdict, the jury

13

obviously believed the Commonwealth's evidence and rejected the evidence and arguments presented by Defendant, including his alternate theory of injury and his attack on the credibility of Dr. Esernio-Jenssen. Doing so was squarely within the jury's province. Under the facts and circumstances of this case, the verdict does not shock the conscience and there is not even a hint that justice has been denied.

Simply, Defendant's weight claim, like his sufficiency challenge, does not hold water.

### 2. The Denial of Defendant's Suppression Motion Was Proper.

In his second assignment of error, Defendant generally alleges that we erred in denying his motion to suppress. This claim also lacks merit.

Our findings and reasons for denying the motion to suppress are stated in the order we issued on October 20, 2015. We incorporate that order into this opinion by reference. To what is stated in the order, we add only the following:

Our determination that Defendant was not subject to a custodial interrogation was based, in part, on our finding that the police detective credibly testified that the subject interview was voluntary and that Defendant was informed that he was not under arrest and was free to leave at any time. It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. *Commonwealth v. Griffin,* 785 A.2d 501, 505 (Pa. Super. 2001). The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing. *Id.; Commonwealth v. Elmobdy,* 823 A.2d 180, 183 (Pa. Super. 2003). On appeal in this case, we reaffirm our finding that the detective was credible

14

and note that his testimony was supported by the recording of the interview that was submitted as an exhibit at the suppression hearing.

For the reasons stated in our October 29, 2015 order, as amplified herein, Defendant's general challenge to the suppression ruling lacks merit.

3.      Expert Testimony Was Properly Allowed

In his third assignment of error, Defendant contends that we erred in allowing the Commonwealth to call a county detective as an expert to testify about text messages and information extracted from the cell phone of Defendant's wife on the basis that the detective did not prepare an expert report. This claim also lacks merit.

Pa.R.Crim.P. 573 provides the Commonwealth shall permit the Defendant's attorney to inspect and copy any results or reports of scientific tests, export opinions, and written or recorded reports with the possession or control of the attorney for the Commonwealth. Pa.R.Crim.P. 573 (B)(1)(e). The rule goes on to state under "Discretionary" disclosure that if an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination the Court, *upon motion*, may order the expert to prepare, and the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert will testify. Pa.R.Crim.P. 573(B)(2)(b). Evidentiary rulings "are committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *Commonwealth v. Cohen*, 605 A.2d 1212, 1218 (Pa. 1992). In addition, the admissibility of expert testimony is also within the sound discretion of the trial court. *Commonwealth v. Petrovich*, 648 A.2d 771, 772 (Pa. 1994); *Com. v. Blasioli*, 685 A.2d 151, 166 (Pa. Super.1996), *aff'd*, 713 A.2d 1117 (Pa.1998)

15

In this case, the detective conducted a forensic analysis of the cell phone and extracted information. The extraction report and related data were provided to counsel for defendant during discovery. However, the expert did not prepare an expert report. As a result, there was no report that the Commonwealth was obligated to provide. (See N.T., 3/13/2017, pp. 93-97, 99-102, 108-09, 138).

Through discovery, Defendant was made aware that Commonwealth intended to call this expert. Nonetheless, Defendant did not file a motion asking us to order that a report be prepared. (Id.). Given the lack of such a motion and the fact that the complete cell phone extraction report was provided to counsel for Defendant in discovery, we discern no error in our permitting the detective to testify as an expert. This is especially true in this case since counsel for defendant was able to cross examine the detective, we ensured that the detective was available for the remainder of the trial in case counsel for Defendant wanted to recall him after further review of records, Defendant has not alleged or demonstrated any prejudice resulting from the lack of a report, and there was no violation of discovery or other rules of procedure or court.

### 4.    Admission of the Challenged Photograph Was Proper

In his fourth assignment of error, Defendant maintains that we erred by admitting a prejudicial and inflammatory photograph of his son into evidence. Defendant does not provide an exhibit number or otherwise identify the specific photograph to which his claim of error refers. Based on the objections made and discussions held during trial, we believe and assume that this assignment of error refers to Commonwealth Exhibit 8, which includes a photograph of Defendant's son, in

16

the hospital, hooked up to various medical apparatus and leads for monitors. The evidentiary challenge is baseless.

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. *Commonwealth v. Malloy*, 856 A.2d 767, 776 (Pa. 2004) (citing *Commonwealth v. Freeman*, 827 A.2d 385, 405 (Pa. 2003)). Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. However, even if relevant, "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

A determination of whether photographic evidence alleged to be inflammatory is admissible involves a two-step analysis. "First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury." *Malloy*, 856 A.2d at 776 (quoting *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 726 (1998)); *Freeman*, 827 A.2d at 405 (images of victims' bodies with partially or totally obscured wounds were not "especially inflammatory" and were admissible to prove specific intent to kill). The availability of alternate testimonial evidence does not preclude the admission of allegedly

17

inflammatory evidence. *Commonwealth v. Tharp*, 830 A.2d 519, 531 (Pa. 2003). *Commonwealth v. Sanchez*, 36 A.3d 24, 48–49 (Pa. 2011).

At trial, the Commonwealth sought to introduce the challenged photo, along with several other photographs, as part of its Exhibit 8. Counsel for defendant objected only to the photo which, as indicated, depicted Defendant's son hooked up to medical apparatus in the hospital. Specifically, counsel lodged a general relevancy objection and an equally general objection that the photo was unduly prejudicial. We overruled the objection and admitted the photograph, indicating that it was only one photo and that the photograph tracked with the testimony we had heard as well as the anticipated and proffered testimony of Dr. Esernio-Jenssen. (N.T., 3/13/2017, pp. 148-151). We believe that the ruling was neither an error of law nor an abuse of discretion.

Even a cursory review of the photograph demonstrates that it is a single depiction of how Defendant's son appeared in the hospital. Given the facts and circumstances of this case, the evidence presented by the Commonwealth, the theories advanced by or on behalf of Defendant, and the elements of the crimes charged, the photograph was clearly relevant. In addition, the photo tracked with testimony and other exhibits which discussed the child's medical condition, evaluation, and treatment. Further, even a cursory glance demonstrates that the photo is not inflammatory. Our determination that the probative value of the photograph outweighed any prejudicial effect was not error

5. The Sentence Imposed Was Proper Under the Facts and Circumstances and Defendant's Sentencing Challenge Lacks Merit

Finally, Defendant alleges that this Court "abused its discretion at sentencing." As written, this assignment of error is grossly insufficient to preserve a sentencing

18

challenge for appeal. However, based on his Post Sentence Motions, it appears reasonable to conclude that Defendant intends to assert a challenge to the discretionary aspect of his sentence by rekindling his contention that we abused our discretion in imposing an aggravated range sentence and failing to properly apply what Defendant believes are mitigating factors. If Defendant is deemed to have preserved this issue, his sentencing challenge is bootless.

Sentencing is a matter within the sound discretion of the trial court. *See Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). In sentencing each particular defendant, the sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed. The options include guilt without further penalty, probation, partial confinement, or total confinement. *Id.*; 42 Pa.C.S. § 9721(a). The court must impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). *See Walls*, 926 A.2d at 967-68; *Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008) ("*Dodge II*"), *appeal denied*, 980 A.2d 605 (Pa. 2009).

In general, a sentencing judge must consider pertinent facts and sentencing factors and the force of the evidence and may not commit an error of law or inflict punishment that exceeds statutory prescriptions. *Commonwealth v. Youngkin*, 427 A.2d 1356, 1369 (Pa. Super. 1981). In more specific terms, "[w]hen imposing a sentence, a court is required to consider the particular circumstance of the offense and the character of the defendant....In particular, the court should refer to defendant's prior criminal record, his age, personal characteristics and his potential for

19

rehabilitation." *Commonwealth v. Moury,* 992 A.2d 162, 171 (Pa. Super. 2010) (quoting *Commonwealth v. Griffin,* 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied,* 868 A.2d 1198 (Pa. 2005), *cert. den,* 545 US 1148 (2005)).

The court determines whether the sentence imposed should run consecutively or concurrently with other sentences to which the defendant is subject. In this regard, it is well-settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. See *Commonwealth v. Mastromarino,* 2 A.3d 581 (Pa. Super. 2010) (and cases cited therein) and *Commonwealth v. Marts, 889,* A.2d 608 (Pa. Super. 2005) (same). *See also* 42 Pa. C.S.A. §9721(a).

The court also determines whether aggravating circumstances exist. If aggravating circumstances are present, "the court may impose an aggravated sentence ...." 204 Pa. Code. § 303.13(a). A sentencing judge "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Stewart,* 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). *See also Commonwealth v. Duffy,* 491 A.2d 230, 233 (Pa. Super. 1985) (holding that a sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range).

The sentencing judge must state his or her reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The judge may satisfy this requirement by stating or demonstrating at time of sentencing that the judge has been informed of the reasons

20

by the PSI report. *Commonwealth v. Coss*, 695 A.2d 831, 834 (Pa. Super. 1997); 42 Pa.C.S.A. § 9721(b). When, as here, a PSI report exists, the law presumes that

> the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself....[Sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true ... in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d at 18. *See also Moury*, 992 A.2d at 171; *Commonwealth v. Fowler*, 893 A.2d 758 (Pa. Super. 2006); *Commonwealth v. Tirado*, 870 A.2d 362 (Pa. Super. 2005); *Commonwealth v. Burns*, 765 A.2d 1144, 1150-1151 (Pa. Super. 2000). In this regard, a sentencing judge is not required, when giving the reasons for a particular sentence, to make a specific reference to the factors set forth in the Sentencing Code that were considered in deciding the sentence, but the record as a whole must reflect that the judge in fact considered the sentencing factors. *Commonwealth v. Coulverson*, 34 A.3d 135, 145-146 (Pa. Super. 2011).

When imposing a sentence within the guidelines that departs from the standard range, the sentencing judge must state on the record his or her reasons for the sentence in the aggravated or mitigated range. 204 Pa. Code § 303.13. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777 (Pa. Super. 2009); *Commonwealth v. Hoover*, 492 A.2d 443 (Pa. Super. 1985).

21

While a sentencing judge may satisfy the requirement to state reasons for the sentence given in a variety of ways, the reasons must be articulated at the time sentence is imposed and may not be supplied later in an appeal opinion issued in accordance with Pa. R.A.P. 1925(a). *See Commonwealth v. Giles*, 449 A.2d 641 (Pa. Super. 1982) (and cases cited therein). Accordingly, the intent of a judge's given sentence is determined at sentencing, rather than after an appeal from the judgment of sentence has been taken. (*Id.*).

In sum, our sentencing laws establish a framework for sentencing. Within the established framework, trial courts have broad discretion in determining the range of permissible confinements that best suits the particular defendant and the circumstances surrounding the event. *See Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992).

The statutory and judicial standards of review are reflective of the type of discretion vested in sentencing courts. Statutorily, the Sentencing Code prescribes a slightly different standard of appellate review for sentences that are outside the guidelines as opposed to sentences that fall within guideline ranges. Sentences that fall within guideline ranges are subject the "clearly unreasonable" standard of 42 Pa. C.S.A. Section 9781(c)(2), while sentences that fall outside the guidelines are subject to the "unreasonable" standard of Section 9781(c)(3). An "unreasonable" decision from the sentencing court would be one that is " 'irrational' or 'not guided by sound judgment.' " *Walls*, 926 A.2d at 963. *See also Dodge II*, 957 A.2d at 1200; 42 Pa. C.S.A. § 9781(c)(2) and (3).

22

Judicially, our Supreme Court has articulated the appellate standard of review as follows:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion....[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. In more expansive terms, our Court recently offered: an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Commonwealth v. Walls*, 926 A.2d at 961 (internal citations, quotation marks, and footnote omitted).

Challenges to the discretionary aspects of sentencing do not entitle a defendant to review as of right. In order to establish that review is warranted, the appellant must demonstrate that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. A substantial question exists only when the defendant advances a colorable argument that the sentencing judge's actions were either: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms of the sentencing process. *See Commonwealth v. Mouzon*, 812 A.2d 617, 627-628 (Pa. 2002) (plurality); *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010); *Moury, supra;*

23

*Commonwealth v. Sierra*, 752 A.2d 910 (Pa. Super. 2000). These issues must be examined and determined on a case-by-case basis. *Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005).

The Superior Court has repeatedly held that allegations the trial court failed to consider particular circumstances or factors in an appellant's case do not raise a substantial question as they go to the weight accorded to various sentencing factors. *Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013); *accord Commonwealth v. Cannon*, 954 A.2d 1222, 1228-29 (Pa. Super. 2008). In addition, the Superior Court has held that an argument that the trial court failed to consider certain mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for review. *Commonwealth v. Ratushny*, 17 A.3d 1269, 1273 (Pa. Super. 2011); *accord Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). *See also Commonwealth v. Downing*, 990 A.2d 788 (Pa. Super. 2010); *Commonwealth v. Matrioni*, 923 A.2d 444 (Pa. Super. 2007); *Commonwealth v. Pass*, 914 A.2d 442 (Pa. Super. 2006).

Additionally, it is now well-settled that the imposition of consecutive, rather than concurrent, sentences generally does not raise a substantial question. Such a claim may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh and *prima facie* appears excessive considering the criminal conduct that occurred in the case, the nature of the crimes, and the length of imprisonment. See *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013) ("*Dodge III*") (and cases cited therein), *appeal denied*, 91 A.3d 161 (Pa.

24

2014); *Commonwealth v. Mastromarino, supra* (same); *Commonwealth v. Moury, supra* (same). As the Superior Court stated in *Dodge III*:

> To make it clear, a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Dodge III*, 77 A.3d at 1270 (emphasis in original; citations and footnote omitted).

Application of these rules, standards, and guidelines to the facts of this case demonstrates that any sentencing challenge Defendant is deemed to have preserved is meritless.

Initially, we do not believe that Defendant will be able to establish the requisite substantial question. Reduced to basics, Defendant baldly complains about receiving an aggravated range sentence and contends that we failed to consider what he believes are mitigating factors. Further, the consecutive individual sentences that added up to an aggregate sentence in the aggravated range is not *prima facie* excessive or unduly harsh. Under the cases cited above, no aspect of Defendant's challenge raises a substantial question.

Alternatively, and additionally, the sentencing challenge is devoid of merit. Before imposing sentence, we identified the evidence, facts, information, documents, and reports, including the PSI, which we considered. We also explained our reasons for imposing the sentence that Defendant now seeks to challenge. (N.T., 06/12/2017, pp. 16-21. See also N.T., 06/11/2017 (Post Sentence Motion Hearing), pp. 11-17). Our on-record statements, coupled with the PSI report that we considered and

25

incorporated, are more than sufficient to explain the reasons for the sentences we imposed, to document that we articulated reasons for the aggravated range sentence, to demonstrate that we complied with applicable sentencing laws and regulations, to show that in sentencing Defendant we acted well within our discretion, and to adequately, properly, and fully address any sentencing issue that Defendant is deemed to have properly preserved for appellate review.

Defendant's claim that we ignored mitigating circumstances in imposing an aggravated range sentence is without merit. Our on-record statements demonstrate that, in fashioning Defendant's sentence, we strove to achieve a sentence that was consistent with the protection of the public, the gravity of the offense in relation to its impact on the community, and the rehabilitative needs (and realities) of Defendant. *See* 42 Pa.C.S.A. §9721(b). In doing so, we had the benefit of a comprehensive PSI report which contained information about the crime that had been committed as well as information -- favorable and unfavorable, mitigating and aggravating -- about Defendant. At the sentencing hearing, we indicated an awareness of and an appreciation for the information contained in the report regarding Defendant's character and background and weighed those factors and the requisite statutory and guideline provisions when deciding and announcing Defendant's sentence. In balancing and weighing relevant factors, we weighed the factors which Defendant characterizes as favorable and mitigating, including Defendant's lack of a prior record, his history of employment, and his family support, against factors that are objectively unfavorable and aggravating including, but not limited to, the fact that the victim was a three-month old child who was the Defendant's son, medical evidence that showed the

26

child had similar older injuries, the severity and longevity of the medical injuries sustained by the child, and other factors articulated during the sentencing hearing. Simply, we considered both favorable and unfavorable factors and imposed an individualized sentence that was warranted by the facts, circumstances, and history of this case.

For the reasons stated during the sentencing hearing, the hearing on Defendant's post-sentence motions, and in the PSI report, as well as those expressed herein, we remain convinced that the sentence we imposed was appropriate and justified under the circumstances of this case.

For all of these reasons, we believe that Defendant's assignments of error have been waived or are meritless. Accordingly, the judgment of sentence should be affirmed.

**BY THE COURT:**

DATE: 10/26/2017

_____
JONATHAN MARK, J.

Cc:  Superior Court of Pennsylvania
     Jonathan Mark, J
     Kimberly Metzger, Esq., Office of the District Attorney
     Brian Gaglione, Esq., Counsel for Defendant

Clerk of Courts
OCT 26 '17 AM 9:38

27